195 N.J. Super. 209 (1984)
478 A.2d 1208
SAMUEL RAVEN, ARTHUR ROSENFIELD, MORRIS SCHMELL AND S.A.M., INC., A NEW JERSEY CORPORATION, PLAINTIFFS-RESPONDENTS,
v.
A. KLEIN & CO., INC., DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued June 12, 1984.
Decided July 20, 1984.
*212 Before Judges KING, DREIER and BILDER.
Frank Holahan argued the cause for appellant (Harwood, Lloyd, Ryan, Coyle & McBride, attorneys; and Theodore J. Greene, pro hac vice, of the New York Bar, Frank Holahan and Theodore J. Greene, on the brief).
George S. Hochberg argued the cause for respondents (Hockberg & Simon, attorneys; Richard I. Simon, on the brief).
*213 The opinion of the court was delivered by DREIER, J.A.D.
Defendant has appealed from a Chancery Division judgment limiting the enforcement of restrictive covenants in plaintiffs Raven's and Schmell's employment agreements. These agreements provided trade secret protection "during or after the course of employment," and provided further for noncompetition with defendant "for a period of ten years." Plaintiffs have cross-appealed, contending that even the limited enforcement of the agreement was unwarranted under the facts of this case and, as to plaintiff Rosenfield, whose employment with defendant terminated in 1974, there should be no enforcement since the only agreements he had signed have long since expired.
The trial judge found that the choice of law provisions in the contracts presented no problems since there was "no significant difference between the law of New York and the law of New Jersey." We concur with that analysis. See Solari Industries, Inc. v. Malady, 55 N.J. 571, 585 (1970) and A.H. Emery Co. v. Marcan Products Corp., 268 F. Supp. 289, 299 (S.D.N.Y. 1967), aff'd, 389 F.2d 11 (2nd Cir.1968), cert. den. 393 U.S. 835, 89 S.Ct. 109, 21 L.Ed.2d 106 (1968). Under the law in both states restrictive covenants will be enforced to the extent that they are reasonable as to time, area and scope of activity, necessary to protect a legitimate interest of the employer, not unduly burdensome upon the employee, and not injurious to the public interest. Solari, 55 N.J. at 585, Gelder Medical Group v. Webber, 41 N.Y.2d 680, 394 N.Y.S.2d 867, 870, 363 N.E.2d 573, 576 (1977).
Our analysis of this case must start with the premise that defendant is not entitled to enforce a restrictive covenant principally directed at lessening competition. N.J.S.A. 56:9-4; Whitmyer Bros., Inc. v. Doyle, 58 N.J. 25, 33-36 (1971). Rather, the covenant must be directed at protecting the employer's legitimate interests, here urged to be its trade secrets. No other use is evident from defendant's argument. Such trade secrets or confidential information cannot merely be the facility, *214 skill or experience learned or developed during an employee's tenure with an employer. Whitmyer Bros., Inc. v. Doyle, 58 N.J. at 25, 37. This standard was correctly employed by the trial judge when he determined that the sole interest of the employer that needed protection was its trade secrets, and that defendant needed protection for a period far less than the 10 years set forth in the employment agreements.
In this case these trade secrets were found by the trial judge to be (1) "the knowledge of the identity of Klein's past and present suppliers of adhesives, wallboard and other paper products"; (2) "the composition and the method of fabricating the paper products and adhesive used in the manufacture of the rolled-edge heart shaped box"; (3) "the application of paper to paper and adhesive to paper"; (4) "fabrication of raw and partially finished materials into the box"; (5) "the machinery used by Klein in the fabrication of the side wall of the box.... The strip making machine ... whose specific design and method of operation is known to Klein"; (6) "the grover machine is in the same category; and (7) "some of the dyes which Klein uses are secret in the protectable sense." In all, these secrets constitute "a manufacturing technique, a processing technique which is unique to Klein and which is not generally known throughout the industry." Such trade secrets are protectable under both the employment agreements and the common-law protection afforded to such trade secrets. Sun Dial Corp. v. Rideout, 16 N.J. 252, 259 (1954).
At oral argument of this appeal defendant's counsel acknowledged that defendant can claim protection for these trade secrets only as they have been developed since 1974, when plaintiff Rosenfield left defendant's employ. He had independently developed a process for making the heart-shaped rolled-edge boxes through his former company, Miro Container Corporation, and defendant acknowledged that Rosenfield was not subject to restraints as to this ten-year-old technology. Defendant urged, however, that the technology was in a constant *215 state of flux and improvement, and that there is a necessity to protect defendant from plaintiffs' use of the post-1974 technology for which defendant had paid as it developed, and which now could easily be appropriated by plaintiffs through Raven's and Schmell's divulging the improvements to Rosenfield and their newly-formed company. In A. Hollander & Son, Inc. v. Imperial Fur Blending Corp., 2 N.J. 235, 250 (1949) the court said:
The validity of the covenants and the breaches being established, it necessarily follows that Imperial Corporation, Caruba and Villani, by participating in the undercover activities, were properly joined in these proceedings. The protection afforded an employer through the enforcement of the covenants not to compete nor to divulge trade methods or secrets extends against third persons who, knowing of the employee's obligation, may profit from his disclosure. This is true although the third party might have reached the same result independently by his own experiments or efforts. Stone v. Grasselli Chemical Co., 65 N.J. Eq. 756 (E. & A. 1903).
See also, A.H. Emery Co. v. Marcan Products Corp., 268 F. Supp. at 299; Harry R. Defler v. Kleeman, 19 A.D.2d 396, 243 N.Y.S.2d 930, 935-936 (N.Y. App. Div. 1963), aff'd, 19 N.Y.2d 694, 278 N.Y.S.2d 883 (1967). The trial judge had the opportunity to see and hear the witnesses and appraise their credibility, and we see no reason to overturn the determination he made concerning the existence of these trade secrets, in view of the substantial basis that exists in the record to support his findings.
Although this court recognizes that boxes manufactured employing the pre-1974 technology would not be subject to protection, there is no way to insulate the older technology against intrusion from that which might be prohibited if we drew the line at 1974. Had Rosenfield not been working with Raven and Schmell, such insulation might have been possible; however, since the post 1974 technology has been revealed to all, a prohibition against manufacture of the end product can provide the only effective remedy to preserve defendant's rights.
*216 As to the question of the specific remedy, we have some disagreement with the trial judge. The difficulty of determining which elements of the technology existed prior to 1974 or were developed after that date appears to have caused him to issue the blanket injunction against the manufacturing of all heart-shaped boxes. He noted that he wished to avoid artificial and subtle enforcement problems by prohibiting plaintiffs from proceeding with the manufacture of cut-edge boxes, as well as rolled-edge boxes. Throughout the testimony it is clear that these two products require different technologies and the only trade secrets subject to protection involved the rolled-edge boxes. In fact, the record reveals no claim by plaintiff that trade secrets existed with respect to the cut-edge technology. We do not envision any substantial difficulties in prohibiting plaintiffs from manufacturing only those specific products which were the basis of defendant's claim of trade secrets. If plaintiffs are manufacturing rolled-edge boxes they would be in violation of the order and, since defendant has a virtual monopoly in this field, it should be able to determine from orders received whether plaintiffs are competing or not. We find the injunction entered against the manufacture of both types of boxes to be overbroad, and we direct that the injunction be limited to the rolled-edge, heart shaped boxes.
A second area where we disagree with the trial judge is in the length of the restrictions. The court found that "the ten year time period is vastly in excess. It is much more than the employer needs, it would work a ruinous and entirely disproportionate hardship on the employee and it would be seriously injurious to the public good to permit too lengthy a period." In determining what period would be proper, the trial judge correctly determined that injunctive relief should be granted for a period equal to the time that would be required for the former employees independently to develop the same process. I.L.G. Industries, Inc. v. Scott, 49 Ill.2d 88, 273 N.E.2d 393, 398 (1971). See also Dooley, 3 Modern Tort Law, Liability and Litigation (1977), § 38.35 at 71, where the use of such a limited *217 injunction is characterized as a "tendency ... in recent cases." The trial judge noted that these trade secrets could be independently discovered in approximately 18 months and, therefore, set this period as the limit for injunctive relief. We do not take issue with this conclusion. But the trial judge recognized that more than mere time was needed to discover the trade secrets. He stated:
Anybody, except the plaintiffs in this case, would have to spend quite a few hundreds of thousands of dollars, maybe in the low millions, to crack into these trade secrets and to perfect the technique and it would take time to do it. These particular employees, if they had the money, could probably go into production almost at once and it is not fair for them to go into production almost at once because what that would amount to would be a direct immediate appropriation for their own personal benefit of secrets which they have acquired on the time and at the expense of A. Klein.
Recognizing that these employees need not spend the "few hundreds of thousands of dollars, maybe in the low millions" to duplicate the trade secrets since they already know the process that defendant had developed, we have determined that the time limit that would be imposed upon one who had no such special knowledge of defendant's processes is insufficient as a factor to balance the equities between these parties.
Although defendant requested damages in its counterclaim, it has not sought such relief on this appeal. Therefore, only an additional period of preclusion can fairly balance the equities in this case. We have thus set a period equal to the development time as the fair equivalent to the development costs that plaintiffs would be spared by reason of their knowledge of defendant's trade secrets.
To summarize, we are accepting the factual determinations of the trial judge, but are modifying the relief granted. First we are extending the injunction for an additional 18 months in recognition of the cost savings to plaintiff in not having to develop the processes independently; second, we are narrowing the scope of the injunction so that it will encompass only the manufacturing of rolled-edge, heart shaped boxes. With these *218 modifications the judgment of the Chancery Division is affirmed.