711 A.2d 410 (1998)
312 N.J. Super. 195
J.H. RENARDE, INC. t/a Renarde Salon, Plaintiff,
v.
Robin SIMS and Anna Hazard, Defendants.
Superior Court of New Jersey, Chancery Division, Monmouth County.
February 19, 1998.[1]
*411 Ben A. Montenegro, Brick Town, for plaintiff, Wilbert & Montenegro.
Carmine R. Villani, Manasquan, for defendants, Zavaglia, Villani & DeLuca.
FISHER, P.J.Ch.

I

THE FACTS
The facts of this case are relatively simple. However, the legal arguments raisedincluding an issue not mentioned in a reported decision in this State for 70 yearsare hotly debated and require close analysis.
Plaintiff J.H. Renarde, Inc., which operates a hairstyling salon in Wall Township, filed a complaint on February 3, 1998 against two former employees, defendants Robin Sims and Anna Hazard. Defendant Sims had been employed with plaintiff or its predecessor since sometime in 1988 and defendant Hazard since June 1996. On January 17, 1998 defendants' employment with plaintiff ceased. Approximately two weeks later, defendant Sims opened a hairstyling business in Manasquan, New Jersey where defendant *412 Hazard is now also employed. Defendant Sims' employment agreement with plaintiff's predecessor, and defendant Hazard's employment agreement with plaintiff, expressly prohibit them from competing with plaintiff within 9 miles of plaintiff's place of business for a 9 month period. Defendants' new business is located approximately 3 miles from plaintiff's business.
Plaintiff seeks an order prohibiting defendants from competing at such close range.

II

PLAINTIFF'S APPLICATION FOR AN INTERLOCUTORY INJUNCTION
Plaintiff's claim for an interlocutory injunction can only succeed if all the factors to be considered by the court favor such relief.

A

Reasonable Probability of Success
A party seeking an interlocutory injunction must first demonstrate a reasonable probability of success on the merits. Crowe v. DeGioia, 90 N.J. 126, 447 A.2d 173 (1982).
Defendant Sims was employed by Renarde Limited, Inc. from 1988 to 1993. On or about July 16, 1993, plaintiff purchased the business from Renarde Limited, Inc. Nevertheless, defendant Sims' employment with the business continued uninterrupted until the events in the last few weeks which gave rise to this lawsuit. In 1988, defendant Sims entered into an employment contract with Renarde Limited, Inc., plaintiff's predecessor. That contract set forth the compensation to be received by defendant and indicated also that as an employee she would have access to the employer's clientele and trade secrets. By way of that contract defendant Sims also agreed to the following restrictive covenant:
The Employee, upon termination of his/ her employment with Employer, whether by resignation or discharge, agrees that he/she shall not, directly or indirectly, for a period of nine (9) months following such termination and within a radius of nine (9) miles of Employer's principal place of business at 192 Highway 35, Wall Township, New Jersey, enter into or engage in a business similar to that of the Employer or otherwise in competition with the business of the Employer, either as an individual or independent contractor, or as a partner or joint venturer, or as an employee or agent of any person or commercial enterprise, or as a shareholder, officer or director of a corporation, or otherwise and in any other capacity whatsoever.
Gogan Certif., Exhibit B.[2]
Defendant Sims claims that she did not agree not to compete with plaintiff and that her agreement to refrain from competing with plaintiff's predecessor was not assignable. In addition, both defendants claim that the covenant is an unreasonable restraint of trade and should not be enforced.

1. Assignability

Defendant Sims' chief argument in opposition to the issuance of injunctive relief rests with the fact that her restrictive covenant was entered into with plaintiff's predecessor, not plaintiff. That is, of course, an undisputed fact. But plaintiff relies upon the additional fact that its predecessor assigned its rights under the contract with defendant Sims to the plaintiff. See, Gogan Certif., Exhibit A[3]. To that defendant argues her contract with the predecessor did not expressly permit assignment and, moreover, that such contracts cannot be assigned as a matter of law.
Initially, it should be observed that the contract is silent as to either party's ability to assign its rights or obligations. The document does not say that it may be assigned nor does it say that it may not be assigned. As a general matter, contract rights and obligations may be freely assigned in the absence of some express contractual *413 prohibition. See, Aronsohn v. Mandara, 98 N.J. 92, 99, 484 A.2d 675 (1984); Restatement, Contracts, 2d § 317(2)(c). Thus, contrary to defendant's position, the mere silence of the writing in question does not bar plaintiff's claim. That leaves the matter of whether the assignment of the right to enforce the restrictive covenant is forbidden by law or "inoperative on grounds of public policy." Restatement, supra, § 317(2)(b). Since defendant has advised of no statutory prohibition, the court need only consider whether the assignment is contrary to public policy.
Defendant's argument is centered on the theorywhich is more than theorythat a court will not compel specific performance of a personal services contract against an employee. Defendant cites Board of Education of Bor. of Flemington v. State Board of Education, 81 N.J.L. 211, 81 A. 163 (Sup.Ct. 1911) to support this, but it is only necessary to recall that the Civil War was fought over a similar theory. One of the results of that conflict was the Thirteenth Amendment and a ban on involuntary servitude. Yes, there is no question that this court will not compel defendant Sims to continue working for plaintiff. That is what the Flemington case says, and that is a result the Thirteenth Amendment compels, but that is not the issue in this case. Plaintiff has not asked this court to compel defendant Sims to continue working for it.
The question is whether a purchaser of a business may enforce a promise not to compete previously made by an employee of that business to the seller of the business. Certainly the Thirteenth Amendment does not speak to that and neither does the Flemington case. That question has, however, been affirmatively answered in this state, albeit not in many years.
The issue was considered by Vice-Chancellor Berry in A. Fink & Sons v. Goldberg, 101 N.J.Eq. 644, 139 A. 408 (Ch.1927). That case decides the precise issue and while this court, being co-equal to the Fink court is not bound by it, see, e.g., Wolf v. Home Ins. Co., 100 N.J.Super. 27, 241 A.2d 28 (Law Div.1968), aff'd 103 N.J.Super. 357, 247 A.2d 345 (App. Div.1968), its analysis is convincing and no reason can be conjured as to why a successor employer may not enforce such a covenant. Our Supreme Court, for example, has upheld covenants not to compete which run with land and which would impact on successors to land interests, Davidson Bros. v. D. Katz & Sons, 121 N.J. 196, 579 A.2d 288 (1990) (a non-competitive covenant restraining property from use as a supermarket for 40 years held not unenforceable as against public policy) and it can thus be concluded that modern courts are not hostile toward binding strangers to such covenants. In short, in upholding the assignment of a restrictive covenant, Vice-Chancellor Berry's reasoning is sound and compelling; he said:
Upon the sale of a business a restrictive covenant made in connection with such sale is assignable without express words to that effect and passes as an incident of the business sold even though not specifically assigned. This necessarily follows if "the agreement can have no independent existence or vitality aside from the business," and this is because it was made for the benefit of the business and not the individual parties to the contract. Upon principle I can see no reason why a restrictive covenant in a contract between employer and employee should not also be assignable as an incident of the business even if not made so by express words.
101 N.J.Eq. at 646-647, 139 A. 408.
It is true that an interlocutory injunction should not issue when a legal question upon which the case turns is not free from doubt. Accident Index Bureau, Inc. v. Male, 95 N.J.Super. 39, 50, 229 A.2d 812 (App.Div.1967), aff'd 51 N.J. 107, 237 A.2d 880 (1968), app.dis. 393 U.S. 530, 89 S.Ct. 872, 21 L.Ed.2d 754 (1969). It is also true that this particular issue has been decided differently in other jurisdictions. There are those jurisdictions which follow Fink, see, Equifax Services, Inc. v. Hitz, 905 F.2d 1355, 1361 (10th Cir.1990)(Kansas law); Norman Ellis Corp. v. Lippus, 13 Misc.2d 432, 176 N.Y.S.2d 5, 6 (Sup.Ct.1955); In re Hearing Centers of America, Inc., 106 B.R. 719 (Bankr.M.D.Fla.1989)(Florida law); and there are those which do not, see, Smith, Bell & Hauck, Inc. v. Cullins, 123 Vt. 96, 101, 183 A.2d 528, 532 (1962); Sisco v. Empiregas, *414 Inc. of Belle Mina, 286 Ala. 72, 75, 237 So.2d 463, 466-467 (1970); Perthou v. Stewart, 243 F.Supp. 655 (D.Ore.1965); Orkin Exterminating Co., Inc. v. Burnett, 259 Iowa 1218, 1228, 146 N.W.2d 320, 327 (1966). The latter view appears to have sprung from Smith, Bell which based its hostility toward assignment on certain quaint notions of employment contracts[4] which this court is not impressed by. In this court's view, it is preferable to assume that when a business is sold, the purchaser and the employee expect, without new negotiations between them, that the purchaser will honor the employment contract and that the employees, who choose to remain, will honor the promises made to the former employer[5]. This thought lies at the heart of Vice-Chancellor Berry's Fink opinion, which accurately sets forth the current philosophy of the courts of this State.
For these reasons, defendant Sims' arguments that her contract with plaintiff's predecessor was not validly assigned and may not be enforced by the successor employer are rejected as a matter of law. And, as for defendant Hazard, as observed above, she, in fact, contracted directly with plaintiff and has no such argument to make.

2. The Reasonableness of the Covenant

Both defendants claim the restrictive covenant is unreasonable in scope. They claim, also, that the covenant constitutes a contract of adhesion.
As to the former, the covenant only bars defendants from competing within nine miles of plaintiff's business. There is no particular argument made as to whether in this industry nine miles is too pervasive and beyond what is necessary for an employer to protect its interests; moreover, in the general language of restrictive covenants, there is nothing about a nine mile radius that strikes this court as unreasonable and the same can be said for the nine month duration of the covenant. See, Ingersoll-Rand Co. v.. Ciavatta, 110 N.J. 609, 542 A.2d 879 (1988) (which cited with approval the following two cases); A.T. Hudson & Co., Inc. v. Donovan, 216 N.J.Super. 426, 524 A.2d 412 (App.Div.1987) (two year covenant upheld); Mailman, Ross, Toyes and Shapiro v. Edelson, 183 N.J.Super. 434, 444 A.2d 75 (Ch.Div.1982) (a two year covenant without geographic limitation held enforceable but only insofar as it prohibited interference with employer's present clientele). This covenant is reasonable on its face and does not seek to stretch its bounds beyond that which is necessary to protect plaintiff's legitimate business interests.
The contract of adhesion argument should not long detain the court. An agreement falls in that category only if there is an unequal amount of bargaining power (which is assumed to be true for present purposes) and only if the thing acquired is something of necessity and the terms are imposed on a take-it-or-leave-it basis. See, e.g., Rudbart v. North Jersey Dist. Water Supply Comm'n, 127 N.J. 344, 353, 605 A.2d 681 (1992); McBride v. Minstar, Inc., 283 N.J.Super. 471, 491, 662 A.2d 592 (Law Div.1994), aff'd o.b. 283 N.J.Super. 422, 662 A.2d 567 (App. Div.1995). Here, defendants could have simply walked away from the deal proposed by their employer without having been deprived of something of great need.
Plaintiff has demonstrated a reasonable probability of success on the merits of its claim that the restrictive covenant is enforceable.

B

Irreparable Injury
Plaintiff must also show, in order to obtain injunctive relief, that it is in imminent *415 danger of being irreparably injured. Crowe, supra, 90 N.J. at 132, 447 A.2d 173. This requires a consideration of whether the injury that may be suffered by the employer is subject to being redressed by monetary damages. It seems apparent on this record that any attempt to quantify such damages would be problematic, not only in determining whether a particular customer who may be served by defendants is one which would have gone to plaintiff's business (but for the unlawful competition) but also because of the difficulty in ascertaining the monetary value of that loss of business. See, National Starch & Chemical Corp. v. Parker Chemical Corp., 219 N.J.Super. 158, 163, 530 A.2d 31 (App.Div.1987). Under those circumstances, this factor should be viewed as supporting the issuance of the injunction.
In the same vein, it also appears that the enforcement of the restrictive covenant would clearly serve a legitimate interest of the plaintiff and is not primarily geared toward lessening competition. The agreements signed by the parties acknowledged the defendants would have access to and become familiar with the plaintiff's clients, client lists and various other alleged confidential information relating to the business. The agreement signed by defendant Sims concedes this:
The employee, during the term of employment under this Contract, will have access to and become familiar with various trade secrets consisting of formulas, patters, devices, processes, customer or client lists (names and addresses), compilations of information, records and specifications which are owned or otherwise the exclusive property of the Employer. Except as may be required by the Employer under the terms of his/her employment, the Employee shall not disclose any of the aforesaid trade secrets, directly and indirectly, nor use them in any way, either during the term of the Contract or at any time thereafter.
All files, records, documents, drawings, specifications, lists, equipment and similar items relating to the business of the Employer, whether prepared by the Employee or otherwise, coming into the possession of the Employee shall remain the exclusive property of the Employer.
Defendants thereby acknowledged[6] that they obtained knowledge and information about plaintiff's business which may only be protected through the enforcement of the covenant. Further, plaintiff claims in this case that both defendants have in their possession plaintiff's client list and other information about those clients. Defendants' responding certifications have not denied this. See, National Starch, supra. Under those circumstances, the court is satisfied that plaintiff is seeking to protect legitimate business interests and is not seeking merely to prevent competition. Raven v. A. Klein & Co., Inc., 195 N.J.Super. 209, 478 A.2d 1208 (App.Div. 1984); Auxton Computer Enterprises, Inc. v. Parker, 174 N.J.Super. 418, 416 A.2d 952 (App.Div.1980).

C

Balancing the Hardships
The court, in considering the propriety of the interlocutory injunction, must consider the hardships of the parties. Unless the hardship to plaintiff if the injunction does not issue greatly outweighs the harm to defendant if it does, the injunction should not issue. See, Zoning Bd. of Adj. v. Service Elec. Cable T.V., 198 N.J.Super. 370, 379, 487 A.2d 331 (App.Div.1985).
Here, the court was advised by counsel during oral argument (none of the sworn statements provided support this) that defendant Sims has apparently invested some tens of thousands of dollars on a new business only three miles from plaintiff's business. If true, defendant Sims will incur an obvious hardship if the injunction issues. But she acted in the face of the rights of plaintiff to protect its business through the restrictive covenant. She took a risk that a court would view her position as she did rather than as the law does. To avoid this problem, she could have earlier sought a declaratory judgment as to her rights and liabilities before she allegedly invested in a competing business in violation of the restrictive covenant. *416 That self-inflicted hardship should not be considered or, at best, should be given very little weight in determining whether the injunction should issue. See, Karlin v. Weinberg, 77 N.J. 408, 424, 390 A.2d 1161 (1978); Restatement, Torts § 941, comment (b); 42 Am.Jur.2d, Injunctions § 58 at p. 801.
Rather, in balancing the equities based on the circumstances existing before defendant Sims acted rashly, the court is satisfied that this weighing favors the issuance of the injunction. Plaintiff's business appears endangered by two former employees potentially working nearby with access to plaintiff's customers and proprietary information. That is the hardship faced by plaintiff if the injunction does not issue. The hardship faced by defendants if the injunction does issue is the fact that they cannot engage in hairstyling within a 9 mile radius of Wall Township[7]. Certainly, plaintiff's hardship of potentially having no protection against the loss of his customer relationships, see, Whitmyer Brothers, Inc. v.. Doyle, 58 N.J. 25, 33, 274 A.2d 577 (1971), greatly outweighs defendants' additional commuting time.

D

The Public Interest
Lastly, the court should consider the public interest. Restraints of trade are, of course, not favored but our Supreme Court does recognize the enforceability of reasonable restrictive covenants. See, e.g., Solari Industries, Inc. v. Malady, 55 N.J. 571, 264 A.2d 53 (1970). This one appears reasonable and so the court fails to see any harm to the public if the injunction issues. In addition, there is no reason to believe that there is a shortage of hair styling businesses in southern Monmouth County such that the public should not have to wait nine months for another.

III

CONCLUSION
For the reasons just expressed the court will prohibit both defendants from acting inconsistently with their restrictive covenants until the final hearing in this case or nine months from now whichever comes first. Trial in the above matter is scheduled to take place on March 30, 1998 at 9:00 a.m.
NOTES
[1] This opinion supersedes the oral opinion delivered on February 10, 1998.
[2] Defendant Hazard signed a similar agreement but, unlike defendant Sims, actually contracted with plaintiff.
[3] There is no dispute that plaintiff faithfully performed its obligations to employ and compensate defendant Sims as set forth in that same contract after the assignment.
[4] "Knowing the character and personality of his master, the employee might be ready and willing to safeguard the trust which his employer had reposed in him by granting a restrictive covenant against leaving that employment. His confidence in his employer might be such that he could scarcely anticipate any rupture between them. As to that particular employer, if a break did occur, he might be willing to pledge that his fidelity would continue after the employment had ended, even at the cost of forsaking the vocation for which he was best suited. This does not mean that he was willing to suffer this restraint for the benefit of a stranger to the original undertaking." 183 A.2d at 532 (emphasis added).
[5] In this case, plaintiff honored the employment contract for five years.
[6] Defendant Hazard's agreement with plaintiff appears to be identical.
[7] Defendant Hazard has also raised the adverse financial consequences she claims she would have incurred if she had refused to execute the employment agreement as well as similar consequences if the injunction issues. These types of personal hardships do not amount to the type of undue hardship that would prevent the enforcement of the covenant. Karlin, supra, 77 N.J. at 418, n. 3, 424, 390 A.2d 1161.