2006 WY 16

**BRIEFING.COM, a California corporation; and Richard C. Green, Appellants (Plaintiffs),**

v.

**Gregory JONES, individually; Cynthia Dietzmann, individually; and StreetAccount LLC, a Wyoming corporation, Appellees (Defendants).**

No. 04–196.

Supreme Court of Wyoming.

Jan. 26, 2006.

---

Thomas A. Nicholas, III and Robert C. Jarosh of Hirst & Applegate, Cheyenne, Wyoming; and Paul E. Chronis and Melissa Eckhause of McDermott, Will & Emery, Chicago, Illinois, for Appellants.

William P. Schwartz, William B. Campbell, and Janet Lewis of Ranck & Schwartz, LLC, Jackson, Wyoming, for Appellees.

Before HILL, C.J., and GOLDEN, KITE, VOIGT, and BURKE, JJ.

VOIGT, Justice.

[¶ 1] This matter is before the Court upon our agreement to answer questions certified to us by the United States District Court for the District of Wyoming, the Honorable William F. Downes presiding.[1] Appellants, Briefing.com and Richard C. Green, filed suit in the federal district court against Gregory Jones, Cynthia Dietzmann, and StreetAccount LLC, based in part on a theory of misappropriation of trade secrets.

## CERTIFIED QUESTIONS

[¶ 2]   1.   Would the Wyoming Supreme Court adopt a common-law cause of action for misappropriation of trade secrets and/or confidential information when former employees of a company are alleged to have misappropriated their former employer's trade secrets and/or confidential information to start a competing business?

2.   If the answer to question number 1 is yes, what are the elements of the cause of action?

## FACTS

[¶ 3]   W.R.A.P. 11.03 requires the certifying court to provide a "statement of all facts relevant to the questions certified," as well as the "nature of the controversy in which the questions arose[.]"   The certifying order from the United States District Court for the District of Wyoming provides the following information in that regard:

*Statement of Alleged Facts Relevant to Certified Questions*

Plaintiff, Briefing.com, is a California corporation that provides analysis of stock and fixed income markets for use by professional and individual investors.   Plaintiff, Richard Green, is the President of Briefing.com and is a member of Briefing.com's board of directors.   The Briefing.com website was started in 1995.   Mr. Green owns approximately 51 percent of Briefing.com's outstanding shares and is Briefing.com's majority shareholder.

StreetAccount LLC is a Wyoming limited liability company whose members include defendants Gregory Jones and Cynthia Dietzmann.   Plaintiffs allege that Defendant StreetAccount LLC is [a] direct competitor of Briefing.com in the internet-based market analysis industry.   Defendants Jones and Dietzmann are citizens of the State of Wyoming.   Mr. Jones and Ms. Dietzmann currently own approximately 10 percent and 1.1 percent, respectively, of the outstanding shares of Briefing.com.

Mr. Jones and Ms. Dietzmann are former employees of Briefing.com. While employed with Briefing.com, they worked in the company's Jackson, Wyoming office.   Ms. Dietzmann was employed by Briefing.com for approximately seven years as a market analyst until her resignation in or

---

**1.** *See* W.R.A.P. 11.01 through 11.07, and Wyo. Stat. Ann. §§ 1–13–104 through 1–13–107 (Lexis-Nexis 2005).

about late February or early March 2003. Mr. Jones was employed by Briefing.com from approximately November 1996 through late February or early March 2003. Plaintiffs allege that in addition to being an employee of Briefing.com, Mr. Jones was also a member of Briefing.com's board of directors for approximately six years until his resignation from that position in April 2003.

Plaintiffs allege that, based on their former positions with Briefing.com, Defendants Jones and Dietzmann knew of Briefing.com's work and proprietary studies in developing Briefing.com's themes and designs. More specifically, Plaintiffs allege that, as employees of Briefing.com, Defendants Jones and Dietzmann had inside access to certain of the company's confidential information and data regarding the internet-based market analysis trade.

Plaintiffs allege that while working for Briefing.com, Ms. Dietzmann developed a list of market contacts that Briefing.com used to obtain market information that could be displayed on its website. Plaintiffs allege that such market contact information developed by Ms. Dietzmann was developed pursuant to her employment with Briefing.com, and is therefore the sole property of Briefing.com. Plaintiffs allege, however, that Ms. Dietzmann did not return all of Briefing.com's market contact information to the company, either before or after her resignation. As a result, Plaintiffs allege that Defendants misappropriated certain of Briefing.com's trade secrets and/or confidential information in order to form and operate a competing business.

*Nature of Controversy in Which the Questions Arose*

In Count V of their Second Amended Complaint ("SAC"), Plaintiffs asserted a common-law cause of action against Defendants for misappropriation of trade secrets and/or confidential information. On or about March 30, 2004, Defendants moved to dismiss Count V of the SAC on the grounds that Wyoming law does not recog-

nize a cause of action for misappropriation of trade secrets. Alternatively, Defendants requested that the issue be certified to the Wyoming Supreme Court for a determination as to whether such a cause of actions exists under Wyoming law. On June 4, 2004, [the federal district court] heard oral argument from all parties relating to Defendants' motion to dismiss Count V. After hearing argument, [it was] determined that there was no controlling precedent under Wyoming law to rule on this issue, and therefore, [the federal district court] found that the questions referenced above should be certified to the Wyoming Supreme Court for resolution.

## DISCUSSION

### *Trade Secret Law*

[¶ 4]  A cause of action for misuse of trade secrets was first recognized by Roman law, and was well known to the common law.[2] Trade secret laws have their genesis in society's need to encourage innovation and to foster standards of trust in the marketplace:

> The basis of the law as to trade secrets, apart from breach of contract, is the abuse of confidence or an impropriety in the means of procurement of information. Trade secrets are protected to encourage the development of new inventions, processes, and business techniques, to protect against breaches of faith and the use of improper methods to obtain information, and to maintain standards of loyalty and trust in the business community. An employee owes a duty of fidelity to an employer while the worker is employed by that employer, even where the employment is at will and even though the worker has not signed an agreement not to use trade secrets acquired by the employee; therefore, an employee will be restrained from using the employer's trade secrets learned during employment. Moreover, one who knowingly and for his or her own interests helps employees to violate their duty of fidelity and trust to their employer with respect to trade secrets is also liable

---

**2.** *See* Restatement (Third) of Unfair Competition § 39 cmt. a (1995) and *Uniform Trade Secrets Act* *with 1985 Amendments* Prefatory Note at 530–532, 14 U.L.A. (2005).

to the employer, and will be restrained from use of the confidential information. 54A Am.Jur.2d *Monopolies, Restraints of Trade, and Unfair Trade Practices* § 1114 (1996 and Supp.2005). At the same time, however, trade secret law has recognized a counterbalancing need for free competition:

It has been said that the law of trade secrets is the result of balancing two conflicting elements essential to society. On the one hand, there is a strong policy favoring free competition, thus entitling an employee to use the skill and knowledge of his trade or profession which he has learned in the course of his employment, for the benefit of himself and the public, if he does not violate a contractual or fiduciary obligation in doing so. On the other hand, in order to promote the progress of science and the useful arts, the law provides certain protections to an originator, one of these being the law protecting trade secrets.

P. Guthrie, Annotation, *Employee's Duty, in Absence of Express Contract, Not to Disclose or Use in New Employment Special Skills or Techniques Acquired in Earlier Employment,* 30 A.L.R.3d 631, § 2 at 636 (1970 and Supp.2005).

[¶ 5] The body of law on this subject has accumulated over many years and it is well annotated in various authorities. *See generally* Alois Valerian Gross, Annotation, *What is "Trade Secret" so as to Render Actionable Under State Law its Use or Disclosure by Former Employee,* 59 A.L.R.4th 641 (1988 and Supp.2005); Michael A. Rosenhouse, Annotation, *Proper Measure and Elements of Damages for Misappropriation of Trade Secret,* 11 A.L.R.4th 12 (1982 and Supp.2005); K.H. Larsen, Annotation, *Former Employee's Duty, in Absence of Express Contract, Not to Solicit Former Employer's Customers or Otherwise Use his Knowledge of Customer Lists Acquired in Earlier Employment,* 28 A.L.R.3d 7 (1969 and Supp.2005); Donald M. Zupanec, Annotation, *Criminal Liability for Misappropriation of Trade Secret,* 84 A.L.R.3d 967 (1978 and Supp.2005); and Gregory M. Wasson, *Misappropriation of Trade Secret Under the Restatement of Torts,* 14 P.O.F.3d 619 (1991 and Supp.2005).

[¶ 6] Today, there are three primary manifestations of trade secret law. The first is the formulation of the common law tort set forth in the 4 Restatement of the Law of Torts, Division Nine, Part 1, Chapter 36, § 757 at 1–2 (1939):

§ 757. Liability for Disclosure or Use of Another's Trade Secret–General Principle.

One who discloses or uses another's trade secret, without a privilege to do so, is liable to the other if

(a) he discovered the secret by improper means, or

(b) his disclosure or use constitutes a breach of confidence reposed in him by the other in disclosing the secret to him, or

(c) he learned the secret from a third person with notice of the facts that it was a secret and that the third person discovered it by improper means or that the third person's disclosure of it was otherwise a breach of his duty to the other, or

(d) he learned the secret with notice of the facts that it was a secret and that its disclosure was made to him by mistake.

[¶ 7] This version of the common law tort has been supplanted by sections now found in the Restatement (Third) of Unfair Competition (1995). The authors of the Restatement explain that change as follows:

Part 1 of the Division covered Interference by Trade Practices and included Chapters 34 (The Privilege to Engage in Business), 35 (Confusion of Source) and 36 (Miscellaneous Trade Practices). The rules relating to liability for harm caused by unfair trade practices developed doctrinally from established principles in the law of Torts, and for this reason the decision was made that it was appropriate to include these legal areas in the Restatement of Torts, despite the fact that the fields of Unfair Competition and Trade Regulation were rapidly developing into independent bodies of law with diminishing reliance upon the traditional principles of Tort law. In the more than 40 years since that decision was initially made, the influence of Tort law has continued to decrease, so that it is now largely of historical interest and

the law of Unfair Competition and Trade Regulation is no more dependent upon Tort law than it is on many other general fields of the law and upon broad statutory developments, particularly at the federal level. The Council formally reached the decision that these chapters no longer belong in the Restatement of Torts, and they are omitted from this Second Restatement. If it should be later decided that the law on these subjects ought to be restated, it will be done by separate restatements on the subjects involved.

4 Restatement (Second) of Torts, Division Nine, Introductory Note at 1–2 (1979).

[¶ 8] The commentary accompanying the trade secret provisions now found in the Restatement (Third) of Unfair Competition make it clear that development of these provisions was not meant to be a "sea change" in the law, but was meant to accommodate the law to developments in the commercial world, especially those wrought by the increased mobility of employees during the industrial revolution. *See* Restatement (Third) of Unfair Competition, *supra*, at 425–426. The prohibition against misuse of trade secrets remains a common law cause of action, formulated through case decision, just as before. These new sections provide as follows:

§ 39. Definition of Trade Secret

A trade secret is any information that can be used in the operation of a business or other enterprise and that is sufficiently valuable and secret to afford an actual or potential economic advantage over others.

§ 40. Appropriation of Trade Secrets

One is subject to liability for the appropriation of another's trade secret if:

(a) the actor acquires by means that are improper under the rule stated in § 43 information that the actor knows or has reason to know is the other's trade secret; or

(b) the actor uses or discloses the other's trade secret without the other's consent and, at the time of the use or disclosure,

(1) the actor knows or has reason to know that the information is a trade secret that the actor acquired under circumstances creating a duty of confidence owed by the actor to the other under the rule stated in § 41; or

(2) the actor knows or has reason to know that the information is a trade secret that the actor acquired by means that are improper under the rule stated in § 43; or

(3) the actor knows or has reason to know that the information is a trade secret that the actor acquired from or through a person who acquired it by means that are improper under the rule stated in § 43 or whose disclosure of the trade secret constituted a breach of a duty of confidence owed to the other under the rule stated in § 41; or

(4) the actor knows or has reason to know that the information is a trade secret that the actor acquired through an accident or mistake, unless the acquisition was the result of the other's failure to take reasonable precautions to maintain the secrecy of the information.

§ 41. Duty of Confidence

A person to whom a trade secret has been disclosed owes a duty of confidence to the owner of the trade secret for purposes of the rule stated in § 40 if:

(a) the person made an express promise of confidentiality prior to the disclosure of the trade secret; or

(b) the trade secret was disclosed to the person under circumstances in which the relationship between the parties to the disclosure or the other facts surrounding the disclosure justify the conclusions that, at the time of the disclosure,

(1) the person knew or had reason to know that the disclosure was intended to be in confidence, and

(2) the other party to the disclosure was reasonable in inferring that the person consented to an obligation of confidentiality.

§ 42. Breach of Confidence by Employees

An employee or former employee who uses or discloses a trade secret owned by the employer or former employer in breach of a duty of confidence is subject to liability for appropriation of the trade secret under the rule stated in § 40.

§ 43. Improper Acquisition of Trade Secrets

"Improper" means of acquiring another's trade secret under the rule stated in § 40 include theft, fraud, unauthorized interception of communications, inducement of or knowing participation in a breach of confidence, and other means either wrongful in themselves or wrongful under the circumstances of the case. Independent discovery and analysis of publicly available products or information are not improper means of acquisition.

§ 44. Injunctions: Appropriation of Trade Secrets

(1) If appropriate under the rule stated in Subsection (2), injunctive relief may be awarded to prevent a continuing or threatened appropriation of another's trade secret by one who is subject to liability under the rule stated in § 40.

(2) The appropriateness and scope of injunctive relief depend upon a comparative appraisal of all the factors of the case, including the following primary factors:

(a) the nature of the interest to be protected;

(b) the nature and extent of the appropriation;

(c) the relative adequacy to the plaintiff of an injunction and of other remedies;

(d) the relative harm likely to result to the legitimate interests of the defendant if an injunction is granted and to the legitimate interests of the plaintiff if an injunction is denied;

(e) the interests of third persons and of the public;

(f) any unreasonable delay by the plaintiff in bringing suit or otherwise asserting its rights;

(g) any related misconduct on the part of the plaintiff; and

(h) the practicality of framing and enforcing the injunction.

(3) The duration of injunctive relief in trade secret actions should be limited to the time necessary to protect the plaintiff from any harm attributable to the appropriation and to deprive the defendant of any economic advantage attributable to the appropriation.

§ 45. Monetary Relief: Appropriation of Trade Secrets

(1) One who is liable to another for an appropriation of the other's trade secret under the rule stated in § 40 is liable for the pecuniary loss to the other caused by the appropriation or for the actor's own pecuniary gain resulting from the appropriation, whichever is greater, unless such relief is inappropriate under the rule stated in Subsection (2).

(2) Whether an award of monetary relief is appropriate and the appropriate method of measuring such relief depend upon a comparative appraisal of all the factors of the case, including the following primary factors:

(a) the degree of certainty with which the plaintiff has established the fact and extent of the pecuniary loss or the actor's pecuniary gain resulting from the appropriation;

(b) the nature and extent of the appropriation;

(c) the relative adequacy to the plaintiff of other remedies;

(d) the intent and knowledge of the actor and the nature and extent of any good faith reliance by the actor;

(e) any unreasonable delay by the plaintiff in bringing suit or otherwise asserting its rights; and

(f) any related misconduct on the part of the plaintiff.

Restatement (Third) of Unfair Competition, *supra*, at 425–527.

[¶ 9] In 1979, the National Conference of Commissioners on Uniform State Laws produced the Uniform Trade Secrets Act (UTSA), which is the third current compilation of trade secret law. As amended in

1985, the UTSA is, as its name implies, intended to be legislatively adopted. Because it is a complex statutory scheme with numerous sections, and because we do not consider it appropriate for judicial adoption, we will not set it out here at length. *See Uniform Trade Secrets Act with 1985 Amendments* § 1, 14 U.L.A., 537 (2005). It should be noted, however, that some version of the UTSA has been adopted by forty-four states and the District of Columbia. The states not listed in 14 Uniform Laws Annotated, *supra*, at 529–30 as having adopted the UTSA are Massachusetts, New Jersey, New York, North Carolina, Texas, and Wyoming. All of these states but Wyoming, however, provide in some manner for a cause of action for misuse of trade secrets. Massachusetts has its own statutes creating tort liability for misappropriation of trade secrets. Mass. Ann. Laws ch. 93, §§ 42 and 42A (Law.Co-op.1994). North Carolina also has its own statutes. 10 N.C. Gen.Stat. §§ 66–152 through 66–157 (LexisNexis 2005). New Jersey provides protection to trade secrets both under employment agreements and the traditional common law protection afforded to such secrets. *Raven v. A. Klein & Co., Inc.*, 195 N.J.Super. 209, 478 A.2d 1208 (1984). New York gives recognition to the common law protections articulated in the Restatement of Torts § 757 and the common law. *See Leo Silfen, Inc. v. Cream,* 29 N.Y.2d 387, 328 N.Y.S.2d 423, 278 N.E.2d 636, 639–40 (1972) and *Sterling Television Presentations, Inc. v. Shintron Co., Inc.*, 454 F.Supp. 183, 188 (S.D.N.Y.1978). Texas recognizes trade secret misappropriation as a common law tort cause of action. *Trilogy Software, Inc. v. Callidus Software, Inc.*, 143 S.W.3d 452, 463 (Tex.App.2004).

### Wyoming Law

[¶ 10] Wyoming is the only jurisdiction in the United States that has not given specific legislative or judicial recognition to a tort cause of action for misuse of trade secrets. This Court has discussed the related issue of covenants not to compete or to use employers' trade secrets, but we have not directly addressed the Restatement of Torts § 757, or either of the more modern formulations of trade secret law. *See Hopper v. All Pet Animal Clinic, Inc.*, 861 P.2d 531, 539 (Wyo. 1993) and *Ridley v. Krout,* 63 Wyo. 252, 180 P.2d 124, 127 (1947). Nevertheless, trade secret protection is a well-established principle in this state. For instance, W.R.C.P. 26(c)(1)(G) protects trade secrets during the pre-trial discovery process in civil cases. And the legislature has recognized the sanctity of trade secrets in numerous statutes: Wyo. Stat. Ann. § 6–3–502(a)(iii) (LexisNexis 2005) (trade secrets as intellectual property in criminal statute); Wyo. Stat. Ann. § 16–4–203(d)(v) (LexisNexis 2005) (trade secrets as exception to right to inspect public records); Wyo. Stat. Ann. § 26–19–304(e)(iii) (LexisNexis 2005) (trade secrets not to be disclosed by insurance commissioner); Wyo. Stat. Ann. § 26–34–129 (LexisNexis 2005) (trade secrets of health maintenance organizations not public documents); Wyo. Stat. Ann. § 27–11–109(f) (LexisNexis 2005) (trade secrets confidential in occupation health and safety investigations); Wyo. Stat. Ann. § 35–24–104(e) (LexisNexis 2005) (trade secrets not to be disclosed in application process for cooperative health care providers); and Wyo. Stat. Ann. § 37–15–401(a)(iv) (LexisNexis 2005) (trade secrets contained in reports to public service commission). Clearly, the concept of trade secret protection is firmly embedded in the existing law of Wyoming.

### The Common Law

[¶ 11] Perhaps this entire discussion should have been shortened to the dual observation that (1) misuse of trade secrets is a recognized common law cause of action; and (2) the Wyoming legislature adopted the common law over 100 years ago. Wyo. Stat. Ann. § 8–1–101 (LexisNexis 2005) provides as follows:

> The common law of England as modified by judicial decisions, so far as the same is of a general nature and not inapplicable, and all declaratory or remedial acts or statutes made in aid of, or to supply the defects of the common law prior to the fourth year of James the First (excepting the second section of the sixth chapter of forty-third Elizabeth, the eighth chapter of thirteenth Elizabeth and ninth chapter of thirty-seventh Henry Eighth) and which

are of a general nature and not local to England, are the rule of decision in this state when not inconsistent with the laws thereof, and are considered as of full force until repealed by legislative authority.

[¶ 12] The question is not so much whether this Court should "adopt" a cause of action for misuse of trade secrets. Rather, the question is whether this Court should declare that such a cause of action exists in the common law that has been statutorily adopted in this State. We begin our resolution of that issue by considering what the "common law" is:

The common law, as frequently defined, includes those rules of law which do not rest for their authority upon any express or positive statute or other written declaration, but rather upon statements of principles found in the decisions of the courts. Common law is the law of necessity, and is applied in the absence of controlling statutory law.

Although the common law is inseparably identified with the decisions of the courts, and can be determined only from such decisions, it has also been said that the common law is not limited to published judicial precedent, but includes the entire wealth of received tradition and usage, fundamental principles, modes of reasoning, and the substance of its rules as illustrated by the reasons on which they are based, rather than the mere words in which they are expressed. Thus, in a broader sense, the common law is the system of rules and declarations of principles from which our judicial ideas and legal definitions are derived, and which are continually expanding. It is not a codification of exact or inflexible rules for human conduct, for the redress of injuries, or for protection against wrongs, but is rather the embodiment of broad and comprehensive unwritten principles, inspired by natural reason and an innate sense of justice, and adopted by common consent for the regulation and government of human affairs.

15A Am.Jur.2d Common Law § 1 (2000) (internal footnotes omitted).

[¶ 13] This Court has been called upon many times to determine the applicability of the common law to various controversies, and our cases are too numerous to cite individually herein. See case annotations following Wyo. Stat. Ann. § 8–1–101 and in 2 West's Wyoming Digest, Common Law, Key Nos. 11–14 (2003 and Cum.Supp.2006). We will, however, point out some key principles that have application to the instant case. We have said, for instance, that the common law is "applicable" within the intent of the adopting statute if it is "applicable to the habits and condition of our society, and in harmony with the genius, spirit and objects of our institutions." Crawford v. Barber, 385 P.2d 655, 657 (Wyo.1963) (quoting Fuchs v. Goe, 62 Wyo. 134, 163 P.2d 783, 792 (1945)). The principles of the common law adopted for this State are only those "adapted to our *circumstances, state of society, and form of government.*" Fuchs, 163 P.2d at 792 (emphasis in original).

[¶ 14] As noted above, the common law is not a set code of law, static and unchanging. Choman v. Epperley, 592 P.2d 714, 716 (Wyo. 1979). Rather,

[t]he common law is not exactly the common law of 1607. Many, and probably most of the rules of the common law of 1607, aside from equitable rules and aside from fundamental maxims, have been modified by judicial decisions.

Krug v. Reissig, 488 P.2d 150, 152 (Wyo. 1971) (quoting In re Smith's Estate, 55 Wyo. 181, 97 P.2d 677, 681 (1940)). In holding to this principle, this Court has repeatedly recognized the dynamic nature of the common law:

That court best serves the law which recognizes that the rules of law which grew up in a remote generation may in the fullness of experience be found to serve another generation badly, and which discards the old rule when it finds that another rule of law represents what should be according to the established and settled judgment of society, and no considerable property rights have become vested in reliance upon the old rule. It is thus great writers upon the common law have discovered the source and method of its growth,

and in its growth found its health and life. It is not and it should not be stationary. Change of this character should not be left to the Legislature.

*Borns ex rel. Gannon v. Voss*, 2003 WY 74, ¶ 26, 70 P.3d 262, 271 (Wyo.2003) (*quoting Jivelekas v. City of Worland*, 546 P.2d 419, 428 (Wyo.1976)). *See also Nulle v. Gillette–Campbell County Joint Powers Fire Bd.*, 797 P.2d 1171, 1173 (Wyo.1990); *Adkins v. Sky Blue, Inc.*, 701 P.2d 549, 551 (Wyo.1985); Lawrence M. Friedman, *A History of American Law*, 17 (Simon and Schuster 1973); 15A Am.Jur.2d *Common Law*, *supra*, § 13; 15A C.J.S. *Common Law* § 15 (2002).

## CONCLUSIONS

[¶ 15] Misuse or misappropriation of a trade secret as a tort was part of the common law adopted by the Wyoming legislature as the "rule of decision" for this State. The numerous statutes listed above recognizing the confidentiality of trade secrets in particular contexts reveal the legislature's commitment to trade secret protection, yet they do not constitute such a "covering of the whole field" as to evidence legislative intent to abrogate the common law rule. *See Snell v. Ruppert*, 541 P.2d 1042, 1046 (Wyo.1975), *overruled on related grounds, by Ferguson Ranch, Inc. v. Murray*, 811 P.2d 287, 290 (Wyo.1991), and *Schlattman v. Stone*, 511 P.2d 959, 961 (Wyo.1973).[3] Furthermore, as Wyoming has advanced into the modern commercial world along with the rest of the United States, its people have the same need for trade secret protection as do the rest of the people of the country. Consequently, we have no hesitation in declaring that the tort of misuse or misappropriation of trade secrets is part of the law of this jurisdiction. Furthermore, because it represents the common law cause of action in its modern and most appropriate version, we adopt the cause of action as it appears in Restatement (Third) of Unfair Competition, *supra*, §§ 39 through 45.

3. Abrogation of the common law is not to be presumed; such legislative intent must clearly appear in the unambiguous language of a statute.

## ANSWERS TO CERTIFIED QUESTIONS

[¶ 16] 1. The common law cause of action for misappropriation of trade secrets and/or confidential information when former employees of a company are alleged to have misappropriated their former employer's trade secrets and/or confidential information to start a competing business is part of the common law in the State of Wyoming.

2. The elements of the cause of action are those contained in Restatement (Third) of Unfair Competition, *supra*, §§ 39 through 45.

HILL, Chief Justice, dissenting, in which GOLDEN, Justice, joins.

[¶ 17] I respectfully dissent because I perceive that the protection of trade secrets and other confidential economic information developed by employers has become an increasingly complex issue that is fraught with technicalities and permeated with vital public policy issues. I would have answered the certified questions in the negative and referred the responsibility for answering those questions to the legislature. Wyo. Const. art. 2, § 1 provides: "The powers of the government of this state are divided into three distinct departments: The legislative, executive and judicial, and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any powers properly belonging to either of the others, except as in this constitution expressly directed or permitted."

[¶ 18] The majority expressly recognizes the complexities of the issues at hand, that the Restatement of Torts § 757 has been deprived of the essence of its vitality, and that this Court does not have authority to adopt the Uniform Trade Secrets Act (UTSA). The vast majority of jurisdictions now use UTSA, or other legislative enactments, to govern this area of law. Prior to this litigation, Wyoming was alone in not having given recognition to a civil remedy to protect trade secrets. Wyoming will now be alone in adopting the Restatement (Third) of

*Kaycee Land and Livestock v. Flahive*, 2002 WY 73, ¶ 9, 46 P.3d 323, 327 (Wyo.2002).

Unfair Competition as the vehicle for filling in this gap. It is my conviction that the Restatement (Third) of Unfair Competition so closely resembles a system of statutes, akin to UTSA, that the adoption of it as the governing law in Wyoming is a usurpation of the Legislature's authority and responsibility.