219 N.J. Super. 158 (1987)
530 A.2d 31
NATIONAL STARCH AND CHEMICAL CORPORATION, PLAINTIFF-RESPONDENT,
v.
PARKER CHEMICAL CORPORATION, ADHESIVE CONSULTANTS CORPORATION AND VINCENT LAURIA, DEFENDANTS-APPELLANTS.
Superior Court of New Jersey, Appellate Division.
Argued April 7, 1987.
Decided April 27, 1987.
Before Judges MICHELS, SKILLMAN and LANDAU.
*159 Bruce L. Harrison argued the cause for appellants (Capehart & Scatchard, attorneys; Bruce L. Harrison, on the brief).
Glenn A. Clark argued the cause for respondent (Riker, Danzig, Scherer, Hyland & Perretti, attorneys; Frank J. Miele, of counsel; Glenn A. Clark and Robert J. Gilson, on the brief).
PER CURIAM.
On leave granted, defendants Vincent Lauria (Lauria), Parker Chemical Corp. and Adhesive Consultants Corp. (referred to jointly as Adcon), appeal from an order of the Chancery Division, Somerset County, which granted preliminary injunctive relief in favor of plaintiff, National Starch Company (National), respecting Lauria's employment with Adcon.
On September 23, 1986, National filed its verified complaint seeking to prevent Lauria from disclosing alleged trade secrets and from working at Adcon in the area of envelope adhesives for a period of 15 months. The trial court entered an order to show cause including temporary restraints, and after oral argument on November 3, 1986, it continued the temporary restraints. The preliminary injunction order under appeal was entered on November 17, 1986.
Lauria and Adcon were preliminarily enjoined so as to bar Lauria from commencing any employment responsibilities that "in any way relate to or involve envelope adhesives," pending final determination. Lauria was also preliminarily enjoined from disclosing any of National's trade secrets and Adcon was enjoined from requiring him to do so. Lauria and Adcon, while disclaiming any necessity for the trade secret restraints, are primarily concerned with the absolute bar against Lauria's performance of any duties in the envelope adhesives area.
The preliminary injunction was granted after argument on the papers. No additional proofs were taken. See R. 4:52-1(a), (c).
*160 National is engaged in the business of developing, manufacturing and marketing a variety of adhesive products, particularly envelope adhesives.
Lauria is a former National employee who resigned on September 9, 1986, after nine years of working exclusively in the area of envelope adhesives. He is presently employed by Adcon at its Atlanta facility. Because of the restraints entered by the trial court, Lauria has not yet worked in the area of envelope adhesives, according to the papers filed by Adcon.
National expends large amounts of time and money in research and development of envelope adhesive products. It is perhaps the second leading manufacturer and marketer of envelope adhesives in the world.
National asserts that it has developed a wide variety of trade secrets and proprietary information which it has zealously sought to protect. According to National, its trade secrets include coded adhesive formulas, codes for interpreting formulas, manufacturing processes, product pricing, quality control procedures, new and existing product research and development, raw material suppliers, marketing and sales strategies and specialized product specifications and formulations for particular customers.
National also asserts envelope adhesives are complex in that they are composed of numerous ingredients, each of which has a unique functional property. Each of these ingredients is selected from hundreds of raw materials available to the adhesive industry from numerous manufacturers. Although these raw materials are generally known and available to the trade, National says that processes for combining them are highly confidential, and in some instances, ingredients have been formulated and manufactured by National for its exclusive use. Therefore, it says, it would be almost impossible for a competitor to duplicate exactly a given envelope adhesive to satisfy all of a customer's desired specifications and qualities *161 solely from a "reverse engineering" analysis of the National product.
Lauria was hired by National in June 1977. He signed an agreement that, upon termination of his employment, he would not disclose confidential information of National. During his employment, Lauria was intimately associated with the development of many sophisticated, highly technical envelope adhesives, through expensive trial and error processes. Lauria's knowledge of National's products and product formulas is admittedly sufficiently detailed and extensive that he can duplicate certain formulas from memory. National asserts that this knowledge would enable Adcon to duplicate a National envelope adhesive formula for a prospective customer without the necessity for the usual trial and error process. This of course, would result in substantial costs savings, with a consequent competitive advantage, to Adcon.
Lauria indicated that his position with Adcon is "technical manager" for the southeastern United States. His responsibilities include: quality control; technical matters related to manufacturing; raw material purchasing; and technical service responsibility for adhesives, including envelope adhesives.
According to the moving papers, at least nine customers of National previously serviced by Lauria are located in his territory. These customers account for approximately 9.5 million dollars of National's envelope adhesives sales. However, says National, Lauria can also use its trade secrets to permit Adcon to secure an unfair advantage as to customers located throughout the United States.
Adcon and Lauria say injunctive relief is not warranted because only 5% of Lauria's time and services will be related to envelope adhesives, and that 95% of his effort will concern other adhesive product lines. They also urge that Adcon has its own highly developed technological capacities, and that "reverse engineering" leaves little room for secrets. Further, inasmuch as Lauria is regarded as an ethical person, there is *162 the added protection of his agreement not to disclose National's trade secrets. Ultimately, it is argued, what has really been enjoined is use of Lauria's skill and "know how," which is not a proper subject for protection. See, Boost v. Faunce, 17 N.J. Super. 458 (App.Div. 1952).
Because the grant of a preliminary injunction typically involves a delicate balance of equities, the scope of interlocutory review of such determinations is narrow. A trial court's decision to issue a preliminary injunction will not be disturbed on appeal unless it results from an abuse of discretion. Continental Group, Inc. v. Amoco Chem. Corp., 614 F.2d 351, 357 (3d Cir.1980).
Here, we are satisfied that the record adequately supports the reasonableness of a preliminary determination by the Chancery judge that Lauria knew trade secrets of National, and that under the circumstances there was sufficient likelihood of "inevitable disclosure," (cf. E.I. DuPont de Nemours & Co. v. American Pot. & Ch. Corp., 41 Del. Ch. 533, 200 A.2d 428, 436 (Del. Ch. 1964)) with consequent immediate and irreparable harm to National, to warrant interlocutory relief preserving the status quo pending trial.
We recognize that where multiple complex chemical compounds are involved, as well as numerous customers with unique product needs, it may be difficult, and sometimes impossible, to establish with specificity in a preliminary summary proceeding the particular formulas, formulations, or application techniques which are threatened. The circumstances here justify more than a "mere suspicion," and constitute a rational basis for the trial court to conclude that there was sufficient threat of impending injury to warrant preliminary relief pending trial. Cf. Continental Group, Inc., 614 F.2d at 359; Standard Brands, Inc. v. Zumpe, 264 F. Supp. 254, 267-268 (E.D.La. 1967); Allis-Chalmers Mfg. Co. v. Continental Aviation & Eng. Corp., 255 F. Supp. 645, 654 (E.D.Mich. 1966); E.I. DuPont, 200 A.2d at 436.
*163 As the trial judge observed, "[d]amages will not be an adequate remedy when the competitor has obtained the secrets. The cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss."
Indeed, Lauria recognized this in his National employment contract which says, "I understand that ... the misuse or disclosure of [trade secrets] would irreparably damage the company. I therefore agree that an injunction against any use or disclosure of information obtained while employed ... is appropriate pending the final decision by the court."
Adcon argues that preliminary relief here was based on mere speculation. As Chancelor Seitz stated in E.I. DuPont de Nemours & Co., 200 A.2d at 436:
The defendants say that a finding of `inevitability' would be no more than a `prophecy' here. Nonetheless, in the context of determining whether a threat of disclosure exists, it is but a finding as to the probable future consequences of a course of voluntary action undertaken by the defendants. Courts are frequently called upon to draw such conclusions based on a weighing of the probabilities, and while a conclusion that a certain result will probably follow may not ultimately be vindicated, courts are nonetheless entitled to decide or `predict' the likely consequences arising from a given set of facts and to grant legal remedies on that basis.
It is sufficient that the circumstances give rise to an inference that substantial threat of disclosure exists. B.F. Goodrich v. Wohlgemuth, 117 Ohio App. 493, 192 N.E.2d 99, 104-105 (Ohio Ct. App. 1963).
Adcon also asserts that the trial judge based the grant of preliminary injunction upon credibility determinations, although no oral testimony was taken as permitted by R. 4:52-1(c). We disagree. There remains, of course, the necessity to explore more fully the factual issues respecting National's claim in this case. The clearly articulated oral opinion below, however, recognized the need to maintain the status quo pending a plenary trial. See Crowe v. DeGioia, 90 N.J. 126 (1982). In doing this, the trial judge properly balanced the relative hardships to the parties, weighing the impact upon 5 to 10% of Lauria's new duties, against an assessment of the probabilities *164 of harmful disclosure. In this, we find no abuse of discretion, and affirm. The matter should proceed to trial as quickly as possible. Jurisdiction is not retained.