**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-2357
_____


HR STAFFING CONSULTANTS LLC; UPSTREAM HEALTHCARE
MANAGEMENT OF NEW JERSEY LLC

v.

RICHARD BUTTS,
                              Appellant


_____


APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY
(D.C. No. 2-15-cv-03155)
District Judge: Hon. Kevin McNulty
_____

Argued September 16, 2015
_____


Before: FISHER, JORDAN, and SHWARTZ, <u>Circuit Judges</u>

(Filed:  September 30, 2015)

George P. Barbatsuly, Esq.
Anthony P. La Rocco, Esq. **[ARGUED]**
Mark D. Marino, Esq.
K&L Gates
One Newark Center
10th Floor
Newark, NJ 07102

        Counsel for Appellant

Anthony Argiropoulos, Esq. **[ARGUED]**
Thomas Kane, Esq.
Epstein Becker & Green
One Gateway Center
Newark, NJ 07102

     Counsel for Appellee

————————

OPINION[*]

————————

SHWARTZ, <u>Circuit Judge</u>

Richard Butts appeals the District Court's order granting HR Staffing Consultants, LLC and Upstream Healthcare Management of New Jersey, LLC (collectively, "HR Staffing") a preliminary injunction preventing Butts from violating the non-compete and confidentiality provisions of his employment agreement with HR Staffing. For the following reasons, we will affirm.

I

HR Staffing is a healthcare staffing company that recruited, trained, and placed both per diem and long term permanent ("LTP") staff at CarePoint, a New Jersey hospital system. For LTP staff, such as Butts, CarePoint approved an annual salary for each position and paid HR Staffing the employee's salary plus 15%. HR Staffing in turn paid the employees' salaries and benefits. In the event CarePoint subsequently hired LTP

———————————

[*] This disposition is not an opinion of the full Court and, pursuant to I.O.P. 5.7, does not constitute binding precedent.

staff, CarePoint was also required to pay HR Staffing a "placement fee" equal to 10% of the employee's salary.

Butts was hired by HR Staffing in 2011 and placed at CarePoint as an LTP staff member, rising to Vice President of Cardiovascular Services. Butts signed an employment agreement with HR Staffing that contained a covenant not to compete (the "non-compete") stating:

> [T]hroughout the term of this Agreement and during the twelve (12) month period immediately following the expiration, termination or non-renewal of this Agreement . . . Employee shall not, except with Company's prior written consent, . . . engage in the furnishing of any aspect of the Services as contemplated under this agreement and/or provide or enter into any contractual relationship relating to any aspect of such Services with any Client, hospital, health care facility, medical group, or other party or entity to provide consulting, management and/or other directorship services to, or participate in the management, operation or development of, any medical practice, hospital or other health care facility that provides such professional medical services, at any health care facility or other location (e.g., hospital, health care facility, medical office, etc.) anywhere within Hudson County and the surrounding counties (Bergen, Passaic, Union, and Essex Counties) in which Employee provided Services during the term of the Agreement at least twenty (20) percent of the time.

App. 306.[1]

Thereafter, CarePoint and HR Staffing entered into a preferential staffing services agreement ("PSSA") that gave HR Staffing priority over other staffing agencies in providing CarePoint with new staff. The PSSA also provided that "[u]pon notice by

_____

[1]No party challenges the reasonableness of the non-compete's one-year duration and five-county geographic scope.

3

CarePoint, [specific] Existing LTP Staff [could] be hired directly by CarePoint without payment of a placement fee." App. 337. Butts was included on the list of "Existing LTP Staff."

CarePoint offered Butts direct employment. He informed CarePoint that he was subject to a non-compete, and it instructed him to seek a written waiver.[2] Butts asked HR Staffing for such a waiver, but it refused.

By this time, HR Staffing had sued CarePoint in New Jersey state court for breach of the PSSA and other contracts. At around the same time, HR Staffing entered talks with several of CarePoint's competitors about possible business opportunities, and planned to move Butts to operate the cardiovascular service line at one of these competitors. Butts was aware of these opportunities, primarily because he was copied on emails concerning them.

On May 1, 2015, Butts resigned from HR Staffing to work for CarePoint. Butts claims that he felt compelled to leave because he was being asked to aid HR Staffing's efforts to disrupt CarePoint's operations "in retaliation for conduct alleged by HR Staffing in an ongoing lawsuit between the companies." App. 371.

Three days later, HR Staffing filed this action against Butts alleging, among other things, breach of his employment agreement. After expedited discovery and an evidentiary hearing, the District Court granted HR Staffing's motion for a preliminary

---

[2] Butts also signed a "Notice of Meeting with CarePoint" at HR Staffing's request, which contained a "remind[er]" that he was subject to a non-compete that HR Staffing reserved the right to enforce. App. 320.

injunction, preventing Butts from being employed for one year by CarePoint within the five New Jersey counties listed in his non-compete or disclosing any of HR Staffing's confidential information to CarePoint. Butts appeals.

## II[3]

"A plaintiff seeking a preliminary injunction must establish [(1)] that he is likely to succeed on the merits, [(2)] that he is likely to suffer irreparable harm in the absence of preliminary relief, [(3)] that the balance of equities tips in his favor, and [(4)] that an injunction is in the public interest." Winter v. Natural Res. Def. Council, Inc., 555 U.S. 7, 20 (2008). The District Court correctly concluded that HR Staffing met the Winter test.

## A

The District Court held that the non-compete is enforceable and that HR Staffing is likely to succeed on the merits of its claim that the non-compete was breached. Under New Jersey law, a non-compete will be enforced "where it [(1)] simply protects the legitimate interests of the employer, [(2)] imposes no undue hardship on the employee, and [(3)] is not injurious to the public." Solari Indus., Inc, v. Malady, 264 A.2d 53, 56 (N.J. 1970). These factors support enforcing the non-compete here.

---

[3] The District Court had jurisdiction pursuant to 28 U.S.C. § 1332(a)(1). We have jurisdiction pursuant to 28 U.S.C. § 1292(a)(1). "We employ a tripartite standard of review for . . . preliminary injunctions. We review the District Court's findings of fact for clear error. Legal conclusions are assessed de novo. The ultimate decision to grant or deny the injunction is reviewed for abuse of discretion." K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist., 710 F.3d 99, 105 (3d Cir. 2013) (internal quotation marks omitted).

5

First, the non-compete protects two legitimate business interests of HR Staffing: preventing disintermediation (the ability of customers or employees to cut out HR Staffing as a middleman), and protecting confidential information. With respect to preventing disintermediation, "middlemen exist because they provide a useful and highly-valued service," Consultants & Designers, Inc. v. Butler Serv. Grp., Inc., 720 F.2d 1553, 1558 (11th Cir. 1983), of locating employees who fit employers' special needs. Without non-competes, employees searching for placements and clients seeking specialized personnel "could get the benefit of [a staffing company's] services without paying the full price of those services" by entering into a direct relationship with each other as soon as employees had been placed. Id. at 1559. Protecting HR Staffing's role in the placement process and thereby ensuring it receives the fees for the only service it provides, is a "legitimate interest,"[4] id., and, because the non-compete helps prevent disintermediation, enforcing it is reasonable. [5] Borg-Warner Protective Servs. Corp. v. Guardsmark, Inc., 946 F. Supp. 495, 502 (E.D. Ky. 1996).

---

[4]Protecting against disintermediation via a noncompete is consistent with New Jersey law. The New Jersey Supreme Court has recognized that employers have legitimate interests in protecting, among other things, "customer relations." Ingersoll-Rand Co. v. Ciavatta, 542 A.2d 879, 887 (N.J. 1988). As the District Court aptly noted, disintermediation could be categorized as interference with customer relations, because Butts being employed by CarePoint instead of HR Staffing, in essence, "divert[s]. . . [HR Staffing's] business." Volt Servs. Grp., Div. of Volt Mgmt. Corp. v. Adecco Emp't Servs., Inc., 35 P.3d 329, 334 (Or. Ct. App. 2001). The non-compete protects against such diversion and thus its enforcement advances a protectable interest.

[5] HR Staffing's decision to forego its placement fee for a group of employees placed with CarePoint under the PSSA does not eliminate its interest in preventing disintermediation as HR Staffing continues to have an interest in incentivizing clients and

6

HR Staffing also has a legitimate interest in preventing the disclosure of confidential information. Ingersoll-Rand Co. v. Ciavatta, 542 A.2d 879, 888 (N.J. 1988). Butts was privy to confidential information about HR Staffing's initiatives to build relationships with CarePoint's competitors. The fact that these plans were in an early stage of development does not eliminate the harm from disclosure, as interfering with one of the deals could injure HR Staffing, particularly given its then deteriorating relationship with its primary client, CarePoint. The conclusion that Butts "would be in a position to inform CarePoint of . . . HR Staffing's plans and undermine these plans for CarePoint's benefit," App. 17, was therefore not clearly erroneous, and enforcing Butts' non-compete protects HR Staffing's interest in safeguarding confidential information.

Second, enforcing the clause imposes no undue hardship on Butts. Courts considering the hardship prong assess "the likelihood of the employee finding work in his field elsewhere . . . [and] the reason for the termination of the relationship between the parties to the employment contract." Karlin v. Weinberg, 390 A.2d 1161, 1169 (N.J. 1978). In this case, CarePoint created a position for Butts outside of the geographic area covered by the non-compete and thus he has not faced a significant hardship as a result of its enforcement. Moreover, Butts left HR Staffing and joined CarePoint knowing that he was subject to a non-compete agreement that HR Staffing refused to waive. Hence, to

---

employees to keep their contracts with it. Columbus Med. Servs., LLC v. Thomas, 308 S.W.3d 368, 390 (Tenn. Ct. App. 2009).

the extent this placement has caused "hardship," he "brought any hardship upon himself." Cmty. Hosp. Grp., Inc. v. More, 869 A.2d 884, 895 (N.J. 2005).

Third, enforcement of Butts's non-compete is "not injurious to the public." Karlin, 390 A.2d at 1166. In assessing this prong, courts consider "the demand for the services rendered by the employee and the likelihood that those services could be provided by other [employees] already practicing in the area." Id. at 1169-70. The public interest in access to medical care can weigh against enforcement of an otherwise reasonable non-compete where the employee has special skills used to provide direct patient care. See Cmty. Hosp. Grp., 869 A.2d at 899-900. Here, however, there is no evidence that enforcement of Butts's non-compete will adversely affect patient care or that others could not perform his duties, and the District Court's findings on these points were not clearly erroneous.

Butts argues that even if the clause is enforceable, HR Staffing's willingness to allow "[e]xisting LTP Staff [to] be hired directly by CarePoint without payment of a placement fee," App 337, constituted "prior written consent" to waive the non-compete, App 306. Waiver of a right can be implicit rather than explicit, but "[s]uch a waiver must be done 'clearly, unequivocally, and decisively.'" Cole v. Jersey City Med. Ctr., 72 A.3d 224, 231 (N.J. 2013) (quoting Knorr v. Smeal, 836 A.2d 794, 798 (N.J. 2003)). We agree with the District Court that HR Staffing did not waive its right to enforce Butts's non-compete. As the District Court points out, the PSSA does not "purport to settle the rights of Butts and HR Staffing vis-à-vis each other," App. 27, but only CarePoint's pre-

8

existing obligation to pay HR Staffing placement fees for a select group of employees.[6]

For these reasons, the District Court did not err in concluding the non-compete was enforceable and that HR Staffing is likely to succeed on the merits of its breach of contract claim.[7]

B

The District Court also did not err in holding that HR Staffing demonstrated a likelihood of irreparable harm if it were not granted an injunction and correctly concluded that such harm was "likely," not merely a "possibility," Winter, 555 U.S. at 22, "imminent," "not . . . a remote future injury," Cont'l Grp., Inc. v. Amoco Chem. Grp, 614 F.2d 351, 359 (3d Cir. 1980) (internal quotation marks and citations omitted); Acierno v. New Castle Cnty., 40 F.3d 645, 655 (3d Cir. 1994), and that money damages are insufficient to remediate the injury. Id. at 653.

HR Staffing's ability to protect its role as an intermediary through the non-compete is essential to its very existence, and money will not remediate the injury if its

---

[6] In addition, HR Staffing, CarePoint, and Butts all acted with the understanding that a written waiver of the noncompetes for the employees on the "Existing LTP Staff" list, such as Butts, was necessary. For example, Butts signed a document acknowledging that he was subject to a non-compete and CarePoint advised him to seek a written waiver of it. For this additional reason, the District Court properly concluded that HR Staffing did not waive Butts's non-compete.

[7] Butts also argues that a preliminary injunction was improper because there are material disputes of fact. Butts is incorrect. The District Court held an evidentiary hearing and engaged in the careful fact-finding that is squarely within its responsibility when deciding a preliminary injunction motion. See A. T. & T. v. Winback & Conserve Program, Inc., 42 F.3d 1421, 1427 (3d Cir. 1994).

business model is destroyed.[8] See Instant Air Freight Co. v. C.F. Air Freight, Inc., 882 F.2d 797, 802 (3d Cir. 1989). In addition, Butts received information about HR Staffing's strategic plans, and the risk of misuse of this information could lead to lost business opportunities and thereby harm HR Staffing. See Pappan Enters., Inc. v. Hardee's Food Sys., Inc., 143 F.3d 800, 805 (3d Cir. 1998) ("Grounds for irreparable injury include . . . loss of trade. . . ."); Cont'l Grp., 614 F.2d at 358-59; see also Nat'l Starch & Chem. Corp. v. Parker Chem. Corp., 530 A.2d 31, 33 (N.J. Super. App. Div. 1987) (once a "competitor has obtained the secrets[,] [t]he cat is out of the bag and there is no way of knowing to what extent their use has caused damage or loss").

Butts argues that there was no evidence that he imminently planned to disclose confidential information, and that he could have done so even before he left HR Staffing. Appellant Br. at 28. "[I]n the context of determining whether a threat of disclosure exists . . . [c]ourts are frequently called upon to . . . decide or predict the likely consequences arising from a given set of facts and to grant legal remedies on that basis." Nat'l Starch, 530 A.2d at 33 (internal quotation marks and citations omitted). Here, Butts left HR Staffing and "transferred his loyalties" to CarePoint, App. 24, and could be willing to disclose damaging information or, at the very least, allow the information to influence his

---

[8] Butts's employment agreement stated that a breach could cause irreparable harm for which damages would not be adequate compensation and the parties to the agreement agreed "not to assert adequacy of money damages as a defense." App. 300. We recognize that such a clause does not bind a court to conclude that irreparable harm is likely but note that it reflects the parties' acknowledgement that money may be insufficient to compensate the non-breaching party.

actions at CarePoint to the detriment of HR Staffing, especially considering his belief that HR Staffing was using him as a pawn in its dispute with CarePoint. Thus, the District Court did not err in finding a concrete risk that HR Staffing's confidential information might be used in a fashion that could cause it irreparable harm.

For these reasons, we conclude that the District Court appropriately found that the threat to HR Staffing's existence and the risk of disclosure of confidential information absent an injunction present a likelihood of irreparable harm.

C

Turning to the balance of the equities, HR Staffing's interest in obtaining the injunction outweighs the harm it may cause to Butts. As discussed above, enforcing the non-compete protects HR Staffing's business model and confidential information and has not interfered with Butts's prospects for alternative employment with CarePoint. Furthermore, where, as here, the employee "willfully breach[ed] a valid restrictive covenant, the harm to [him] is a predictable consequence of [his] willful breach and . . . is not the type of harm from which we seek to protect [him]." Laidlaw, Inc. v. Student Transp. of Am., Inc., 20 F. Supp. 2d 727, 768 (D.N.J. 1998) (internal quotation marks and citations omitted). Thus, the District Court exercised sound discretion in concluding that the equities tip in favor of HR Staffing.

D

The District Court's conclusion that the public interest does not weigh against enforcement of the non-compete is also correct. While the public interest factor is not

11

satisfied simply because enforcement of a contract provision is generally a good thing, see Cont'l Grp., 614 F.3d at 358 ("If the interest in the enforcement of contractual obligations were the equivalent of the public interest factor in deciding whether or not to grant a preliminary injunction, it would be no more than a makeweight for the court's consideration of the moving party's probability of eventual success on the merits"), we nevertheless agree that "the public at large can be expected to gain from the enforcement" of non-competes that make it possible for staffing agencies to continue performing their services for both employees and employers. Consultants & Designers, 720 F.2d at 1560, 1558. Moreover, Butts has failed to show that patient care would in any way suffer as a result of its enforcement. Thus, the public interest does not weigh against an injunction.

III

For the foregoing reasons, we will affirm the District Court's order granting a preliminary injunction.