**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court."
Although it is posted on the internet, this opinion is binding only on the
parties in the case and its use in other cases is limited. R.1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0455-16T4

IN THE MATTER OF W.L.

_____

Submitted September 20, 2017 — Decided October 2, 2017

Before Judges Haas and Rothstadt.

On appeal from Superior Court of New Jersey,
Chancery Division, Essex County, Docket No.
C-000012-16.

Kunal Sharma, attorney for appellant W.L.

Christopher S. Porrino, Attorney General,
attorney for respondent New Jersey Department
of Corrections (Melissa H. Raksa, Assistant
Attorney General, of counsel; Nicole E. Adams,
Deputy Attorney General, on the brief).

PER CURIAM

Defendant W.L., an inmate at Northern State Prison (NSP),[1]

engaged in a months-long hunger strike that placed his health and

life in imminent danger. Defendant appeals from the January 21,

2016 and March 18, 2016 orders of the Chancery Division, granting

a preliminary injunction to the Department of Corrections that

_____

[1] Defendant's maximum release date is December 28, 2017.

permitted the Department's medical personnel to provide involuntary medical treatment and nutrition to defendant. Defendant also appeals from an August 15, 2016 order dismissing his counterclaim with prejudice for failure to state a claim upon which relief may be granted. R. 4:6-2(e). We affirm in part, reverse in part, and remand for further proceedings.

Prior to transferring defendant to NSP in December 2014, the Department housed defendant at New Jersey State Prison (NJSP). While at NJSP, defendant went on a prolonged hunger strike between March 2012 and March 2013, which caused him to lose approximately 100 pounds from his 260-pound frame. Defendant refused to regularly eat or take fluids because he said he was upset with a disciplinary charge he received that resulted in his placement in administrative segregation for a lengthy period of time.

Defendant was not happy with his transfer to NSP. In the months that followed, the Department advised defendant that he would soon be placed in a double cell with another inmate. Defendant asserted that he had not yet successfully transitioned from living in segregation to living in the general prison population, and that placing him with another inmate would adversely affect his physical and mental health.

Based on these complaints, defendant began a second hunger strike in July 2015 and again refused to regularly consume food

or fluids. As a result, defendant's health rapidly deteriorated. Defendant also refused to cooperate with medical staff who were attempting to monitor his vital signs. The uncontradicted medical evidence in the record reveals that by January 2016, when the Department sought the preliminary injunction, defendant had already suffered tissue and cardiac muscle destruction, and severe malnutrition. The Department's medical director opined that defendant was in danger of dying if the Department was not permitted to provide life-saving treatment to him.

On January 7, 2016, the Department filed a verified complaint and an order to show cause seeking a preliminary injunction permitting it to provide treatment to defendant. Following oral argument, the trial judge entered a temporary injunction permitting the Department to monitor defendant's vital signs, perform lab tests, and feed defendant "via intravenous hydration and a Naso-Gastric" tube if he refused to voluntarily take nutrition pending the return date.

Following a hearing, the judge entered a second order on March 18, 2016, granting a preliminary injunction to the Department. The order permitted the Department to provide involuntary medical treatment and nutrition to defendant if he refused, and to "employ reasonable force in order to conduct lab tests to obtain blood and urine samples" from defendant and to

give him intravenous hydration and nutrition. The judge found that the preliminary injunction was "necessary to avoid serious bodily damage and/or death."

Together with his answer to the Department's complaint, defendant filed a four-count counterclaim. Among other things, defendant asserted that the Department violated his Eighth Amendment protections against cruel and unusual punishment by keeping him in isolation and then attempting to place him in the general prison population without adequate transitional care. Defendant also alleged that the Department deprived him of due process, and infringed his First Amendment right to engage in political protest by taking retaliatory action against him as a result of his hunger strikes.

The Department filed a motion to dismiss defendant's counterclaim. On August 15, 2016, the judge granted the Department's motion and dismissed defendant's claims with prejudice. This appeal followed. On appeal, defendant argues that the trial judge erred by granting the Department the preliminary injunction and dismissing his counterclaim with prejudice.

At the outset, we recognize that the three orders listed in defendant's amended notice of appeal are interlocutory because the trial judge never conducted a final hearing to determine whether

the restraints ordered on January 21, and March 18, 2016 should be permanent or were no longer necessary. Thus, the judge did not issue a final, appealable judgment in this case. See Smith v. Jersey Cent. Power & Light Co., 421 N.J. Super. 374, 383 (App. Div.) (holding that in order for a "judgment to be final and therefore appealable as of right, it must dispose of all claims against all parties") (internal quotation marks and citation omitted), certif. denied, 209 N.J. 96 (2011).

"Ordinarily, appellate courts seek to avoid 'piecemeal litigation' and the 'premature review of matters.'" House of Fire v. Zoning Bd., 379 N.J. Super. 526, 531 (App. Div. 2005) (quoting Moon v. Warren Haven Nursing Home, 182 N.J. 507, 513 (2005)). Thus, this appeal is subject to dismissal. Nevertheless, in an effort to facilitate a fair and final resolution, we will address the disputed issues. See R. 2:4-4(b)(2) (permitting us to grant leave to appeal as within time).

"Because the grant of a preliminary injunction typically involves a delicate balance of equities, the scope of . . . review of such determinations is narrow. A trial court's decision to issue a preliminary injunction will not be disturbed on appeal unless it results from an abuse of discretion." Nat'l Starch & Chem. Corp. v. Parker Chem. Corp., 219 N.J. Super. 158, 162 (App. Div. 1987) (citation omitted).

A-0455-16T4

Applying this deferential standard, we discern no basis for disturbing the trial judge's decision to grant the Department a preliminary injunction to enable it to save defendant's life. We affirm substantially for the reasons set forth in the judge's oral opinions of January 21, and March 17, 2016.

In rendering his thoughtful decisions, the judge carefully applied the well-settled test of Crowe v. De Gioia, 90 N.J. 126, 132-34 (1982), and made specific findings concerning each of the Crowe factors. The judge found that defendant's life was in imminent danger; his heart was "racing" and "skipping beats"; and he was in "a severe malnourished state." Unless given nutrition and hydration, defendant was at "serious risk of irreversible organ damage, [which] may have already occurred, heart attack, organ failure, brain damage, muscle breakdown, along with kidney and liver failure, or death." The judge further found that the Department's established duty to protect inmates, coupled with its and the public's strong interest in preserving the lives of inmates in the Department's custody, outweighed defendant's interest in protesting the conditions of his confinement.

On this record, the judge's findings and conclusions are unassailable and, therefore, we affirm the January 21, and March 18, 2016 orders. As noted above, however, we are required to remand this matter to the trial court for a final hearing to

6

determine whether the restraints issued in those orders should be made permanent or dissolved, and for the entry of a final judgment.

We are also constrained to reverse the trial judge's decision to dismiss defendant's counterclaim with prejudice. We review a grant of a motion to dismiss a pleading for failure to state a cause of action de novo, applying the same standard under Rule 4:6-2(e) that governed the motion court. See Frederick v. Smith, 416 N.J. Super. 594, 597 (App. Div. 2010), certif. denied, 205 N.J. 317 (2011). Such review "is limited to examining the legal sufficiency of the facts alleged on the face of the [pleading]," and, in determining whether dismissal under Rule 4:6-2(e) is warranted, the court should not concern itself with the party's ability to prove his or her allegations. Printing Mart-Morristown v. Sharp Elecs. Corp., 116 N.J. 739, 746 (1989). If "the fundament of a cause of action may be gleaned even from an obscure statement of claim," then the pleading should survive this preliminary stage. Craig v. Suburban Cablevision, Inc., 140 N.J. 623, 626 (1995) (citation and internal quotation marks omitted).

A trial court should grant the dismissal "in only the rarest of instances." Printing Mart, supra, 116 N.J. at 772. Ordinarily, such motions are granted without prejudice. Smith v. SBC Commc'ns Inc., 178 N.J. 265, 282 (2004).

Here, the judge found that the primary defect in defendant's counterclaim was his failure to assert sufficient facts to support his claim that the Department violated his constitutional rights. For example, the judge found that defendant's Eighth Amendment claims were deficient because defendant "failed to plead any facts that suggest[ed] deliberate indifference" on the Department's part to defendant's complaints about being moved from isolation to a double-lock cell. The judge also noted that defendant did not allege that the Department "committed specific harms" in connection with this housing arrangement.

With regard to defendant's argument that the Department did not provide him with due process concerning its housing and medical treatment decisions, the judge found that defendant failed to "allege how the transfer between administrative segregation . . . to general population and/or the infirmary impose[d] an atypical or significant hardship for him[.]" The judge also found that defendant's First Amendment arguments were wanting because the counterclaim only contained a one-sentence allegation that the Department violated his "rights to free speech of a political nature by threatening to end [the] hunger strike by extraordinarily and predictably painful and obtrusive means of force feeding."

Thus, defendant may well have been able to file an amended counterclaim that alleged sufficient facts to correct the

A-0455-16T4

deficiencies the judge found in his initial pleading. However, the judge dismissed the counterclaim with prejudice without giving defendant an opportunity to amend it.

Considering the matter de novo, we conclude that the dismissal should have been without prejudice, especially because the judge found that defendant alleged insufficient facts in the pleading. We therefore reverse the portion of the August 15, 2016 order dismissing defendant's counterclaim with prejudice, and remand to allow him an opportunity to file an amended counterclaim.

Affirmed in part; reversed in part; and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION