NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 22-1830
_____

22ND CENTURY TECHNOLOGIES, INC.

v.

ILABS, INC.,
                    Appellant

_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 3-22-cv-00717)
District Judge: Honorable Zahid N. Quraishi

_____

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
on February 6, 2023

Before: CHAGARES, *Chief Judge*, SCIRICA, and RENDELL, *Circuit Judges.*

(Filed: May 12, 2023)

_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**SCIRICA**, *Circuit Judge*

Government contractor 22nd Century Technologies obtained a preliminary injunction barring iLabs, its subcontractor, from working on certain U.S. Department of Agriculture projects for a year. iLabs contends granting the injunction was an abuse of the District Court's discretion because its contract agreement with 22nd Century Technologies is unenforceable and because 22nd Century Technologies cannot show irreparable harm. We find no abuse of discretion. The parties' contract is likely enforceable and 22nd Century Technologies has demonstrated continuing harm: the potential loss of future projects and frustrated relationships with both its government client and other government contractors. We will affirm.

I.

The parties are government contractors actively soliciting work from the Farm Loan Program Group of the U.S. Department of Agriculture. As we write for the parties, we will not discuss the intricacies of the Farm Loan Program Group's contractor solicitation practices or the projects on which the parties worked.

22nd Century Technologies ("22nd Century") engaged iLabs as a subcontractor after the Farm Loan Program Group awarded 22nd Century a contract for a series of IT modernization projects in 2015. The parties executed an agreement ("the Agreement") that included confidentiality, non-solicitation,[1] and exclusivity provisions. iLabs continued

---

[1] The Agreement defines "solicitation" as follows:

[iLabs] agrees not to solicit, directly or indirectly, [22nd Century] clients for business, during the term of this agreement and for a minimum of one (1) Years after the termination of this agreement. In addition, [iLabs] also agrees not to solicit

working for 22nd Century under the Agreement after the series of projects concluded because AttainX, 22nd Century's business partner, was awarded a contract for related projects. 22nd Century worked as AttainX's subcontractor, and iLabs worked as 22nd Century's subcontractor. While work on these projects was underway, AttainX unsuccessfully bid on a contract vehicle[2] for additional related projects. The Farm Loan Program Group awarded that contract vehicle to Creative Systems and Consulting ("CSC"), a competitor.

In 2021, CSC approached AttainX about the possibility of teaming up to prepare bids for projects under the vehicle. CSC then approached iLabs with an offer to team up, which iLabs accepted. iLabs, without 22nd Century's knowledge, then helped CSC prepare a successful bid. iLabs' work for CSC on the bid included "read[ing] material scripted by

---

> directly or indirectly any business from companies (which includes the subcontracting company, with whom [22nd Century] has contracted, who directly placed the consultant at the client site as well as the direct client site companies as well as affiliates, subsidiaries, divisions, parent companies and [22nd Century's] or subcontractors of these companies) which [22nd Century] has presented [iLabs] candidates during the term of this agreement and for a minimum of one (1) year after the termination of this agreement, irrespective of whether or not they are placed with said client. . . . The term client refers to the end client to whom [iLabs] personnel are going to provide services under this agreement . . . .

JA65 ¶ 5.

[2] A contract vehicle is a contract or group of contracts that a government agency uses to pre-select vendors before soliciting bids for a particular product or service. A contractor holding a contract vehicle is eligible to submit bids but is not guaranteed to be awarded a contract. *See* U.S. GENERAL SERVICES ADMINISTRATION, *Ways You Can Sell to Government*, https://www.gsa.gov/sell-to-government/step-1-learn-about-government-contracting/ways-you-can-sell-to-government#Contractvehicles (last updated Apr. 14, 2023).

CSC to the potential government customer." Appellant Br. 7. iLabs also recruited a 22nd Century employee during the same time period.

After the Agreement terminated in late January 2022, 22nd Century sued iLabs for breach of contract, alleging that iLabs violated the Agreement's confidentiality, non-solicitation, and exclusivity provisions. After an evidentiary hearing, the District Court issued an injunction on the basis of the non-solicitation provision alone.[3] The court found that 22nd Century demonstrated irreparable harm in the form of lost client relations because iLabs' conduct would likely continue to harm its relationships with the Farm Loan Program Group and other contractors. The court enjoined iLabs from working with CSC on projects under CSC's contract vehicle and from soliciting any other work from the Farm Loan Program Group for a year, as measured from the termination of the parties' Agreement. The court ordered 22nd Century to post $750,000 as security. iLabs timely appealed.

## II.[4]

Injunctive relief is an "extraordinary remedy." *Novartis Consumer Health, Inc. v. Johnson & Johnson-Merck Consumer Pharms. Co.*, 290 F.3d 578, 586 (3d Cir. 2002)

---

[3] We focus on the non-solicitation provision as the District Court found that 22nd Century did not make a sufficient showing that iLabs breached the agreement's confidentiality and exclusivity provisions.

[4] The District Court had jurisdiction under 28 U.S.C. § 1332. We have jurisdiction under 28 U.S.C. § 1292(a)(1). We review the grant of a preliminary injunction for abuse of discretion. *Amalgamated Transit Union Local 85 v. Port Auth. of Allegheny Cty.*, 39 F.4th 95, 102 (3d Cir. 2022). In practice, this is a "'tripartite standard of review': findings of fact are reviewed for clear error, legal conclusions are reviewed de novo, and the decision to grant or deny an injunction is reviewed for abuse of discretion." *Del. Strong Families v. Att'y Gen. of Del.*, 793 F.3d 304, 308 (3d Cir. 2015) (*quoting K.A. ex rel. Ayers v. Pocono Mountain Sch. Dist.*, 710 F.3d 99, 105 (3rd Cir. 2013)).

4

(citation omitted). We have repeatedly held that a district court must weigh four factors when considering a request for a preliminary injunction: "(1) whether the movant has a reasonable probability of success on the merits; (2) whether irreparable harm would result if the relief sought is not granted; (3) whether the relief would result in greater harm to the non-moving party[;] and (4) whether the relief is in the public interest." *Amalgamated Transit Union Local 85* v. *Port Auth. of Allegheny Cty.*, 39 F.4th 95, 102–03 (3rd Cir. 2022) (quoting *Swartzwelder v. McNeilly*, 297 F.3d 228, 234 (3d Cir. 2002)). The first two factors are the "most critical." *Reilly v. City of Harrisburg*, 858 F.3d 173, 179 (3d Cir. 2017) (citation omitted). Only after the moving party makes a threshold showing that these two factors are met will the district court determine "in its sound discretion if all four factors, taken together, balance in favor of granting the requested preliminary relief." *Greater Phila. Chamber of Commerce v. City of Phila.*, 949 F.3d 116, 133 (3d Cir. 2020) (citation omitted); *see also ADP, LLC v. Rafferty*, 923 F.3d 113, 120 (3d Cir. 2019).

A.

We consider each of the factors in turn. First, a plaintiff must show "a reasonable chance, or probability, of winning." *In re Revel AC, Inc.*, 802 F.3d 558, 568 (3d Cir. 2015) (citation omitted). A reasonable chance is "not necessarily more likely than not." *Reilly*, 858 F.3d at 179; *see also id.* at 179 n.3. But plaintiffs must still demonstrate that they would be able to prove each element of their claims. *See Punnett v. Carter*, 621 F.2d 578, 588 (3d Cir. 1980) (observing that moving parties need not place their right to receive a preliminary injunction beyond all doubt but still must carry their burden of establishing a prima facie case).

5

A breach of contract claim requires the plaintiff to prove the existence of "a valid contract, defective performance by the defendant, and resulting damages." *Globe Motor Co. v. Igdalev*, 139 A.3d 57, 64 (N.J. 2016) (quoting *Coyle v. Englander's*, 488 A.2d 1083, 1088 (N.J. Super. Ct. App. Div. 1985)). We agree with the District Court that iLabs likely breached the non-solicitation provision of its agreement with 22nd Century. The provision bars iLabs from directly or indirectly soliciting (1) 22nd Century's clients and (2) companies that 22nd Century sent iLabs employees to as consultants, regardless of whether the employees ever performed work for those companies, for "a minimum" of one year after the end of the Agreement. JA65.

There is sufficient evidence in the record to support a finding that iLabs directly solicited the Farm Loan Program Group, 22nd Century's end client, as well as AttainX, 22nd Century's business partner and prime contractor.[5] The relationship between 22nd Century and iLabs ended on Friday, January 28, 2022. iLabs entered into a teaming agreement with CSC in August 2021 and began helping CSC prepare its bid on January 31, 2022—the Monday after its relationship with 22nd Century ended. iLabs also hired a former 22nd Century employee on January 31, 2022. iLabs expressed an intent to continue working with CSC on bids for Farm Loan Program Group projects. iLabs did not inform 22nd Century of

---

[5] Prime contractors are general contractors—they contract directly with the government and manage subcontractors, who do not contract directly with the government. Some government contracts require prime contractors to subcontract to small businesses. U.S. SMALL BUSINESS ADMINISTRATION, *Prime and Subcontracting*, https://www.sba.gov/federal-contracting/contracting-guide/prime-subcontracting#:~:text=Prime%20contractors%20work%20directly%20with,for%20Award%20Managemen t%20(SAM) (last visited May 3, 2023).

its relationship with CSC because it had signed a non-disclosure agreement. In addition, an iLabs employee solicited AttainX, 22nd Century's business partner, via texts and phone calls in January 2022. Based on this evidence, 22nd Century could demonstrate that iLabs breached the non-solicitation provision.

iLabs argues that 22nd Century has no chance of prevailing on the merits because the non-solicitation provision is unenforceable. Under New Jersey law, which governs the parties' contract, restrictive covenants such as the non-solicitation provision are enforceable to the extent necessary to "protect [the employer's] legitimate interests" without causing "undue hardship on the defendant" or "impair[ing] the public interest." *Solari Indus., Inc. v. Malady*, 264 A.2d 53, 61 (N.J. 1970); *Whitmyer Bros., Inc. v. Doyle*, 274 A.2d 577, 581 (N.J. 1971). A restrictive covenant is unreasonable if it hinders competition more than it protects legitimate business interests. *Ingersoll-Rand Co. v. Ciavatta*, 542 A.2d 879, 895 (N.J. 1988).

Protecting customer relationships is a legitimate business interest. *Ingersoll-Rand Co.*, 542 A.2d at 888 ("*Solari* and *Whitmyer* both recognize as legitimate the employer's interest in protecting trade secrets, confidential information, and customer relations."). Protecting customer relationships includes preventing disintermediation—*i.e.*, customers cutting out a middleman or subcontractor. *See HR Staffing Consultants LLC v. Butts*, 627 F. App'x 168, 172 n.4 (3d Cir. 2015) (explaining how preventing disintermediation is a form of protecting customer relations and citing *Ingersoll-Rand*). Government contractors must make a more detailed showing of a need for protection than is generally required because of the transparent character of the government contracting industry. The entire

7

industry is "fully aware when public work is available" and government agencies generally choose contractors based on "price rather than personal consideration." *Whitmyer Bros.*, 274 A.2d at 583.

iLabs understands *Whitmyer Bros.* to hold that government contractors, because of the transparent nature of their industry, cannot claim protecting customer relationships as a legitimate business interest unless they also identify a threat to their trade secrets or confidential information. This bright line rule is not explicitly stated in the opinion. The New Jersey Supreme Court mentions only that Whitmyer Bros. "may have legitimate interests in protecting its customer relationships" before describing the transparent nature of the government contracting industry and concluding that the defendant employee was unlikely to "be in any position to harm the plaintiff's relationships with the governmental entities or with prime contractors doing work for them." *Id.* at 583–84. We cannot find, and iLabs does not offer, any cases interpreting *Whitmyer Bros.* as putting forth a bright-line rule.

New Jersey courts have embraced a flexible and case-specific approach to restrictive covenants. Where possible, a court will tailor an overbroad covenant rather than invalidating it. *ADP,* 923 F.3d at 122; *see also id.* at 120 (describing New Jersey courts applying the *Solari/Whitmyer* test as "eschewing a dichotomous choice between enforcement and invalidation"). There is nothing in the record before us to suggest that a

court would decline to tailor the non-solicitation provision and instead declare it unenforceable.[6]

iLabs' own description of its efforts to help CSC prepare a bid suggests government contractors "expend great energy and money in soliciting clients and developing projects for their benefit." *A.T. Hudson & Co. v. Donovan*, 524 A.2d 412, 416 (N.J. Super. App. Div. 1987). Because the industry is transparent and government agencies usually make decisions based on price alone, *Whitmyer Bros.*, 274 A.2d at 583, contractors cannot hope to develop long-term exclusive relationships with their government customers. They may rely on reputation or goodwill to maintain such relationships with other contractors, but these relationships, too, may ebb and flow in response to government customer needs. Accordingly, a government contractor may not be able to claim an interest in protecting customer relationships on the ground it successfully bid on an agency project or successfully teamed with another contractor in the past. But the lack of long-term relationships in the industry means that shorter-term relationships—those associated with ongoing or upcoming bids, projects, or teaming opportunities—are important to the

---

[6] The parties' agreement includes the following severability provision:
> If any term or provision of this Agreement shall be found by a Court of competent jurisdiction to be illegal or otherwise unenforceable, the same shall that invalidate the whole of this Agreement but such term or provision shall be deemed modified to the extent necessary in the court's opinion to render such term or provision enforceable and the rights and obligations of the parties shall be construed and enforced accordingly, preserving to the fullest permissible extent the intent and agreements of the parties herein set forth.

JA66 ¶ 10.

viability of a government contractor's business and are "worthy of protection." *A.T. Hudson & Co.*, 524 A.2d at 416.

The record here is illustrative. 22nd Century first engaged iLabs as a subcontractor on a project for which it was the prime contractor. iLabs then continued to work with 22nd Century on separate, but related, bids and projects for which AttainX was the prime contractor. iLabs now declares an intention to continue working with CSC on additional bids and projects. These continued collaborations on work for a single end client strongly suggest that the maintenance of customer relationships is valued in the government contracting industry, even if those relationships are shorter-term than in other industries. If they were not so valued, CSC would have had little incentive to request that iLabs sign a non-disclosure agreement.

Accordingly, a court considering the parties' non-solicitation provision is unlikely to find it unenforceable. Instead, a court would likely tailor it, as the District Court tailored the preliminary injunction, to cover only 22nd Century's customers with whom iLabs was in contact. *See ADP, LLC*, 923 F.3d at 122 ("[I]f a restrictive covenant seeks to protect client relationships, [New Jersey] courts have narrowed the covenant to clients with which the employee interfaced."). iLabs had direct contact with the Farm Loan Program Group while working for both 22nd Century and CSC. For 22nd Century, iLabs "maintain[ed] the currently operating USDA systems." Appellant Br. 5. For CSC, iLabs "provid[ed] a high level overview of the company" and had an employee "read material scripted by CSC" to the Farm Loan Program Group during the bidding process. *Id.* at 7.

A court would likely find that the tailored non-solicitation provision is enforceable because iLabs' conduct put it in a "position to harm" 22nd Century's relationships with the Farm Loan Program Group and other government contractors. *See Whitmyer Bros.*, 274 A.2d at 583. The government contracting industry may be transparent, but iLabs' conduct was not. iLabs, while still under contract with 22nd Century, teamed up with 22nd Century's competitor (and possible collaborator) without 22nd Century's knowledge to solicit 22nd Century's current client. As the District Court pointed out, "iLabs eliminated one layer of subcontract by dealing directly with [CSC]." JA18; *see Butts*, 627 F. App'x at 172 (identifying disintermediation as a form of interference with customer relations). Even if 22nd Century would not have chosen to team up with CSC, iLabs' intent to continue working with CSC at minimum prevents 22nd Century from enjoying the "open and even playing field" iLabs suggests is characteristic of the government contracting industry. Reply Br. 14. 22nd Century will likely be able to show harm in the form of lost teaming, bidding, and project opportunities flowing from iLabs' conduct.

As the party moving for a preliminary injunction, 22nd Century does not have to show a certainty of success on the merits—just a reasonable chance. 22nd Century has made that showing.

B.

In addition to showing a reasonable chance of success on the merits, a plaintiff seeking a preliminary injunction must demonstrate that it will suffer irreparable harm in the absence of the injunction. Irreparable harm is "not merely serious or substantial"—it is an injury that monetary compensation cannot cure. *Siemens U.S. Holdings Inc. v.*

11

*Geisenberger*, 17 F.4th 393, 407–08 (3d. Cir. 2021) (citation omitted); *see also Campbell Soup Co. v. ConAgra, Inc.*, 977 F.2d 86, 91 (3d Cir. 1992) ("[T]he plaintiff must demonstrate potential harm which cannot be redressed by a legal or an equitable remedy following a trial.") (citation omitted). The harm must be "immediate" or a "presently existing actual threat." *Cont'l Grp., Inc. v. Amoco Chems. Corp.*, 614 F.2d 351, 359 (3d Cir. 1980) (cleaned up). This Court has long recognized that a preliminary injunction is appropriate when a plaintiff's injury is compensable by monetary damages but the amount of those damages is difficult to prove with reasonable certainty. *See Apollo Techs. Corp. v. Centrosphere Indus. Corp.*, 805 F. Supp. 1157, 1210 (D.N.J. 1992) (collecting Third Circuit opinions). "Grounds for irreparable injury include loss of control of reputation, loss of trade, and loss of goodwill." *Pappan Enters., Inc. v. Hardee's Food Sys., Inc.*, 143 F.3d 800, 805 (3d Cir. 1998).

As noted above, 22nd Century has made a sufficient showing of harm flowing from iLabs' breach of the non-solicitation provision of their Agreement. It stood to lose teaming, bidding, and project opportunities when iLabs accepted CSC's offer, and it will continue to do so as long as iLabs continues to work with CSC. 22nd Century's losses are not speculative, as both 22nd Century and iLabs intend to bid on upcoming Farm Loan Program Group projects.

The existence of actual harm is not hard to discern here—iLabs admits 22nd Century could be entitled to damages should the court find iLabs in breach. But calculation of some of 22nd Century's damages will be difficult. At stake here is not only work from the Farm Loan Program Group, the value of which is easily expressed in monetary terms, but also

12

22nd Century's reputation and goodwill, which are not. Because other contractors are also competing for work, it will be challenging for 22nd Century to show what projects it may have been awarded, or what it would have bid, in the absence of iLabs' collaboration with CSC. *See Laidlaw, Inc. v. Student Transp. Am.*, 20 F. Supp. 2d 727, 767 (D.N.J. 1998) (finding, in a case involving contractors submitting bids to a New Jersey agency, irreparable harm because it was "impossible to calculate" the impact of defendant's interference on plaintiff's contract awards and bidding practices).

As a result, 22nd Century can demonstrate irreparable harm.[7]

## C.

The final two factors—whether the relief would result in greater harm to the non-moving party and whether the relief is in the public interest—also weigh in favor of a preliminary injunction here. iLabs does not seriously contest either factor individually, so we take it that iLabs believes the District Court did not abuse its discretion in considering either one.

---

[7] iLabs contends any harm 22nd Century has suffered is not irreparable because 22nd Century did not file this case for six months and has no reasonable explanation for the delay. The record shows that the parties attempted to resolve this matter out of court after 22nd Century sent iLabs a demand letter in November 2021. There is no requirement that a plaintiff forego extrajudicial attempts to resolve a dispute in order to move for a preliminary injunction. We do not, however, credit 22nd Century's statement that it timed its filings deliberately to protect the interests of its government client. 22nd Century and AttainX filed suit against CSC and iLabs in the District of Maryland on January 4, 2022. 22nd Century and iLabs' business relationship was not terminated until late January. The Maryland case was voluntarily dismissed on February 1—a day before 22nd Century filed this case in New Jersey state court. Regardless of 22nd Century's reasons for its filing decisions, there is nothing in the record to suggest that 22nd Century was dilatory in pursuing relief.

First, a preliminary injunction would not result in greater harm to iLabs than the harm it would prevent for 22nd Century. As the District Court found, iLabs' harm is self-inflicted. Instead of waiting a year or notifying 22nd Century of its intention to seek other work, iLabs secretly teamed up with 22nd Century's competitor. Harm resulting from the willful breach of a valid restrictive covenant is not the sort of harm the law seeks to protect against. *Laidlaw*, 20 F. Supp. 2d at 768; *see also Pappan Enters.*, 143 F.3d at 806 (finding the "self-inflicted nature of any harm suffered . . . weighs in favor of granting preliminary injunctive relief"). And the harm iLabs would suffer if enjoined is minimal. It will still be able to work with other contractors on bids and projects for other U.S. Department of Agriculture groups—iLabs will only be unable to solicit the Farm Loan Program Group and work with CSC, and it will only be enjoined from those endeavors for a year. Second, again as the District Court found, enforcing restrictive covenants that balance the interests of the parties involved is in the public interest.

III.

The District Court's consideration of these factors and ultimate conclusion did not "rest[] on an incorrect legal standard, a clearly erroneous factual finding, or a misapplication of the law to the facts." *TD Bank NA v. Hill*, 928 F.3d 259, 270 (3d Cir. 2019). 22nd Century has demonstrated a strong probability of success on the merits and that it stands to suffer irreparable harm to its client relationships if iLabs is not enjoined. As iLabs only stands to suffer self-inflicted harm, any injury an injunction would cause is outweighed by the benefit to 22nd Century. In addition, it is in the public's interest to incentivize compliance with narrowly tailored restrictive covenants protecting legitimate

14

business interests, such as the non-solicitation provision at issue here. Accordingly, the District Court's grant of 22nd Century's preliminary injunction was not an abuse of discretion, and we will AFFIRM the District Court.